UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'MARCO CRAFT, ET AL.,

Plaintiffs,

v.

RICHARD BILLINGSLEA, ET AL.,

Defendants.

_____/

Case No. 17-cv-12752

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#183], GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#181], GRANTING IN PART AND DENYING IN PART DEFENDANT BILLINGSLEA'S MOTION FOR SUMMARY JUDGMENT [#151]**

## I. INTRODUCTION

On August 22, 2017 Plaintiffs D'Marco Craft ("Craft") and Michaele Jackson ("Jackson") commenced this action against nine City of Detroit police officers, a Detroit Fire Department medic, and the City of Detroit. ECF No. 72. Defendant Richard Billingslea ("Billingslea") is represented separately from the ten other Defendants (collectively referred to as the "City Defendants").[1] Plaintiffs filed their Third Amended Complaint on January 30, 2019 pursuant to 42 U.S.C. § 1983,

_____

[1] The City Defendants include Hakeem J. Patterson, Yossif Mana, Antoine Hill, Glenn Bines, David Mays, II, Naim Brown, Michael Bailey, Randall Craig, Bryan Moore, and the City of Detroit.

alleging that Defendants violated their First, Fourth, and Fourteenth Amendment rights during encounters in April 2016, June 2016, December 2016, March 2017, and May 2017. *Id.*

Presently before the Court are Plaintiffs' Motion for Summary Judgment, the City Defendants' Motion for Summary Judgment, and Defendant Billingslea's Motion for Summary Judgment. ECF Nos. 151, 181, 183. Each party filed their Responses in Opposition to the respective motions. ECF Nos. 160, 164, 186, 191. Reply Briefs were also filed by each party. ECF Nos. 172, 174, 193, 195. A hearing on this matter was held on March 6, 2020. For the reasons that follow, the Court will DENY Plaintiffs' Motion for Summary Judgment [#183], GRANT IN PART and DENY IN PART the City Defendants' Motion for Summary Judgment [#181], and GRANT IN PART and DENY IN PART Defendant Billingslea's Motion for Summary Judgment [#151].

## II. FACTUAL BACKGROUND

Plaintiffs' Third Amended Complaint addresses about five different interactions between Plaintiffs and certain Defendants throughout 2016 and 2017. The majority of the counts alleged in the Complaint stem from an encounter on May 31, 2017.

**A. May 2017 Incident**

In the early hours of May 31, 2017, Plaintiffs Jackson and Craft were driving home from an event and stopped at a Mobil Gas Station, located at 17046 Harper Avenue in Detroit, Michigan.  ECF No. 183, PageID.9329; ECF No. 186, PageID.9585.  Plaintiffs wanted to purchase cigarettes at the gas station's convenience store.  *Id*.  Defendants Billingslea and Patterson were on patrol that evening and had independently stopped at the gas station so that Billingslea could use the restroom.  ECF No. 186, PageID.9589.

At approximately 1:30 a.m., Craft exited his vehicle and walked into the gas station convenience store.  ECF No. 183, PageID.9329; ECF No. 186, PageID.9585; ECF No. 151, PageID.5132.  Upon entering the store, Craft noticed Billingslea inside and turned around to leave.  *Id*.  Billingslea yelled after Craft, who responded by extending his middle finger to Billingslea and exiting the store.  *Id*.  As Craft walked away, Billingslea walked to the front of the convenience store and stood in front of the door.  *Id*.  Craft started to walk back towards the car he arrived in, but quickly turned around and attempted to re-enter the store.  *Id*.  The Defendants state that Craft then approached Billingslea and "st[uck] his hand in his face."  ECF No. 186, PageID.9586.  Billingslea denied Craft entry into the store.  ECF No. 183, PageID.9329.  Billingslea testified in his deposition that he "stopped Craft from entering the store because, for safety, he wanted to keep everything in front of him

so that he could see both Craft and his partner, Patterson." ECF No. 151, PageID.5132. Billingslea told Craft to leave and purchase cigarettes at a different gas station, and then walked away from the door and back into the convenience store. ECF No.183, PageID.9329.

Once Craft returned to the vehicle and spoke with Jackson, Jackson exited the vehicle and began walking towards the store. *Id.* Billingslea returned to stand in the doorway. *Id.* Jackson attempted to enter the store, but Billingslea was standing in the doorway. ECF No. 183-2. The parties dispute who initiated contact first in the doorway; Defendants argue that Jackson barged into Billingslea in an attempt to get past him. ECF No. 186, PageID.9586; ECF No.151, PageID.5133. Jackson states that Billingslea made contact first by grabbing Jackson. ECF No. 181-11, PageID.8939. Billingslea and Jackson engaged in their first physical altercation, with Billingslea grabbing Jackson and eventually taking him down to the ground outside of the store. ECF No. 183, PageID.9329; ECF No. 186, PageID.9585. Patterson exited the police vehicle and assisted Billingslea in holding Jackson down on the ground. *Id.* The officers never handcuffed Jackson or placed him under arrest. Instead, the officers allowed him to stand back up after about thirty seconds. *Id.*; *See* ECF No. 183-3.

As Billingslea and Patterson restrained Jackson outside the gas station, Craft began recording the encounter on his cell phone. *Id.* Billingslea yelled at Craft to

back away from the area. *Id*. The parties dispute whether Craft backed up enough in response to Billingslea's command. *Id*. Billingslea then advanced towards Craft and continued to tell him to back up. *Id*. At one point, Billingslea stated "I'm about to mace you," and the two yelled back and forth. *Id*. The parties also disagree whether Billingslea made contact with Craft or his cell phone during this encounter. *Id*.

Next, Billingslea turned back towards Jackson's and Patterson's location. *Id*. Billingslea yelled again at Jackson, who walked briefly away from where he was taken down, towards the gas pumps, and then again towards the store, all while yelling back at Billingslea. *Id*. Billingslea followed behind Jackson during this route around the gas pumps. *Id*.

Jackson re-entered the gas station convenience store and Billingslea followed. *Id*. In the store, Billingslea attempted to grab Jackson's arm. *Id*. Jackson asked the store clerk for cigarettes. *Id*. At the same time that Jackson engaged with the store clerk, Billingslea moved again and grabbed Jackson's left arm. *Id*. Jackson then turned around and swung his arm at Billingslea, making contact with his upper torso and possibly his face. *Id*. Patterson and Craft also entered the store at about this time, and Craft continued to record the incident. *Id*.

Billingslea then took out his mace and sprayed Jackson in his face. *Id*. In response, Jackson turned back around away from Billingslea and towards the store

counter.  *Id.*  Billingslea moved closer to Jackson and grabbed him from behind by his head and shoulders, lifted him off of the ground, and spun him down to the floor. *Id.*  Billingslea next got on top of Jackson's back and attempted to handcuff him.  *Id.* Patterson continued to watch from near the doorway.  *Id.*

During this second physical altercation between Billingslea and Jackson, Billingslea threw three punches to the right side of Jackson's head.  *Id.*  Billingslea also delivered at least one knee strike to Jackson's left midsection.  *Id.*  Jackson was on his hands and knees at this point, struggling back with Billingslea.  *Id.*  After these strikes, Patterson walked over to Craft, who was still recording the incident, and told him to back up.  *Id.*  Throughout the video, Craft is depicted as recording the situation, being told to leave or being physically moved outside of the store, and then returning inside to continue recording.  *Id.*

About ninety seconds after the second takedown, additional officers arrived on the scene, including Defendants Hills, Bines, and Brown.  *Id.*  Brown, Billingslea, and Bines eventually handcuffed Jackson, who was by then lying face-down in the store's aisle.  *Id.*  Jackson continued to engage in conversation with the officers once he was handcuffed, often yelling and rolling back and forth on his side and stomach. ECF No. 183-4 at 1:57-2:38.  There were multiple instances where Brown and other officers had to grab Jackson and push him back on to his stomach.  *Id.*  Jackson was

eventually brought to his feet, escorted out of the store, and placed in the back of a police vehicle.  ECF No. 183, PageID.9333.

At the same time as Jackson's handcuffing, Billingslea and Patterson told the additional officers to remove Craft from the scene.  *Id*.  Brown and Hill approached Craft, and Hill grabbed Craft's cell phone from his hand and removed him from the store.  ECF No. 151, PageID.5136.  Craft was smoking a cigarette outside of the gas station store when he was approached by Defendant Bailey, who told Craft to put out his cigarette.  ECF No. 151, PageID.5137.  Defendants then state that Craft was detained in the back of a police vehicle "to determine if he had interfered with the officers while they were trying to arrest Jackson."  *Id*.  Shortly thereafter, Bailey told Craft that he was free to leave, but Craft responded that he did not want to leave without his cell phone.  *Id*.  Bailey entered the store and spoke with Billingslea, who produced Craft's cell phone from his pocket.  *Id*.  Bailey and Billingslea determined that the phone needed to be placed on evidence to preserve the video and could not be returned to Craft at that time.  *Id*.

Meanwhile, Jackson had been placed in the rear seat of a police vehicle.  ECF No. 183, PageID.9333.  A City of Detroit policy requires officers to flush a maced individual's eyes within fifteen minutes of the mace spray.  *Id*.  Billingslea approached Jackson and told him to lean out of the car so that he can flush his eyes. *Id*.  Jackson instead replied that he wanted an ambulance.  *Id*.  The parties dispute

whether Jackson refused to have his eyes flushed at that time; Jackson argues that he was not explicitly refusing help and just wanted an ambulance, while Defendants allege that he responded "no, I'm good," to the request to flush his eyes. *Id.*; ECF No. 151, PageID.5139. Shortly thereafter, the paramedic Defendant Moore showed up, inspected Jackson, determined that he did not need stitches, and left the scene. *Id.* Jackson was then transported to the hospital where he was evaluated, treated, and released. *Id.*

As a result of this encounter, Billingslea was charged with multiple counts in Michigan state court. *Id.* He pled no contest to one count of obstruction of justice and one count of aggravated assault. *Id.*

### B. April 2016 Incident

Craft claims that on April 27, 2016, he was standing in the driveway of a residence located at 5920 Audubon Road when he was approached by Defendants Billingslea, Patterson, and Mana. ECF No. 72, PageID.939. Defendants assert that Craft was illegally walking in the street in front of the residence and, upon spotting the Defendants, "fled toward a driveway." ECF No. 151, PageID.5129. The Defendants claim that Craft was "clenching the right side of his shirt," which raised suspicion about the possession of a weapon. *Id.* The officers detained and frisked Craft. *Id.* Craft asserts that the officers physically assaulted him with "at least 3-4

knee strikes." ECF No. 72, PageID.940. As a result of this incident, Craft was charged with disorderly conduct and inciting a riot. *Id.* at PageID.941.

On June 6, 2016, Craft pled not guilty to these charges, and on June 27, 2016, the charges were dismissed as no arresting police officer appeared at the trial. *Id.*

### C. June and/or July 2016 Incidents

First, Craft alleges that "on or about June or July of 2016," he was standing in the area of Harper and Cadieux when Billingslea approached him. ECF No. 72, PageID.941. Craft states that Billingslea ran towards him, kicked in his general direction without making contact with Craft's person, and then waived his hands in front of Craft's face. *Id*. Craft alleges that Patterson watched and did not act or intervene. *Id*. Defendants state that Patterson was present but never got out of the squad car. ECF No. 181, PageID.8184.

Second, Craft alleges that around the same time period, Billingslea and Patterson detained and searched Craft unlawfully. ECF No. 72, PageID.942. Defendants state that Craft "did not reference this incident in his deposition when he was asked about all interactions he has had with the Detroit Police," ECF No.181, PageID.8184, and that "[n]o record of this interaction with Craft exists," ECF No. 151, PageID.5129.

### D. December 2016 Incident

Craft alleges that he was again searched and detained in December 2016 by Billingslea and Patterson at the same Mobil Gas Station as the May 2017 incident. ECF No. 72, PageID.942. Craft's brother, Darrius, was allegedly also searched and detained. *Id.* Similar to the June and July incidents, the Defendants state that there is no record of this interaction and that no facts have been developed regarding this allegation. ECF No. 151, PageID.5155.

### E. March 2017 Incident

Craft states that on March 14, 2017, he was again searched and arrested by Billingslea, Patterson, Mana, Hill, Mays, and Bines. Shortly after Craft entered his vehicle, which was parked in front of his mother's house, the officers instructed Craft to exit his car. ECF No. 72, PageID.942. Craft states that the Defendants physically attacked and detained him while also searching his vehicle. *Id.* While nothing illegal was discovered on his person or in his vehicle, Craft was arrested, jailed, and charged with disorderly conduct. *Id.* Defendants state that Craft was yelling and swearing at the officers, which gave them probable cause to arrest him for disorderly conduct. ECF No. 181, PageID.8208.

Based on a request and motion to dismiss by the prosecuting attorney, the disorderly conduct charge was dismissed in its entirety on April 21, 2017. ECF No. 72, PageID.943.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

Plaintiffs, the City Defendants, and Defendant Billingslea have each filed motions for summary judgment addressing some or all of the seventeen counts in Plaintiffs' Third Amended Complaint. All of Plaintiffs' claims arise under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments, as well as supervisory and municipal liability. In their respective motions, Plaintiffs seek summary judgment on five counts (Counts I, V, X, XI, and XVII), City Defendants

on fifteen counts (Counts I through XIII, XVI, and XVII), and Defendant Billingslea on fourteen counts (Counts I, II, III, V through XIV, and XVI). Defendants argue that they are entitled to qualified immunity on all of Plaintiffs' claims. The qualified immunity standard and each count is addressed in turn below.

### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides government officials "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal citations and quotation marks omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted).

To determine whether a police officer is entitled to qualified immunity, the Court applies a two-prong test: "(1) whether the facts, when taken in the light most

favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citation omitted). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 243–44 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

A qualified immunity determination will be incorporated in the analysis for each count and defendant involved. The Court must view the facts in the light most favorable to Plaintiffs Jackson and Craft, the parties asserting the injury. If a genuine dispute of material fact exists regarding a clearly established right, summary judgment on qualified immunity grounds will be denied.

### B. Fourth Amendment Excessive Force (Count I)

To answer the question of whether a defendant's use of force violated the Fourth Amendment "turns on whether [their] actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to [their] underlying intent or motivation." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

13

Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee.  *Id*.  "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure."  *Kent*, 810 F.3d at 390 (internal quotation marks omitted).  The district court "must take into account the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation."  *Id*.

### 1.  Defendant Billingslea

Plaintiff Jackson seeks summary judgment against Defendant Billingslea on Count I, alleging excessive force in violation of the Fourth and Fourteenth Amendments.  Specifically, Jackson claims that Billingslea used excessive force four separate times: (1) "when he slammed Jackson into the ground on his first attempt to enter the gas station," (2) "when he maced Jackson," (3) "when he used a chokeslam to take Jackson to the ground," and (4) "when he kneed and punched Jackson after he had already slammed him to the ground."  ECF No. 183, PageID.9380.  Separately in his cross-motion for summary judgment, Billingslea argues that any force utilized was objectively reasonable under these circumstances and therefore summary judgment will be granted in his favor.

Jackson and Billingslea's first altercation began when Jackson tried to enter the gas station convenience store while Billingslea stood in front of the door, attempting to prevent entry. *See* ECF No. 151, PageID.5133; ECF No. 183, PageID.9329. Billingslea argues that Jackson "barges right into" him, which Billingslea believes was an assault, although Jackson stated in his deposition that he and Billingslea did not make physical contact prior to Billingslea grabbing him by the shirt and pushing him out the door. The video of the incident does not clearly reveal the veracity of one party's narrative over the other, as the altercation occurs within seconds. *See* ECF No. 183-2 at 1:36. Additionally, Jackson was not told he was under arrest until after all four alleged uses of excessive force, contradicting Billingslea's claims that he needed to subdue Jackson after "active resistance" to arrest. ECF No. 160, PageID.5221. It is evident that the facts regarding force used during the altercations between Jackson and Billingslea are heavily disputed. Billingslea's conduct, as depicted on the videos, was not clearly or objectively reasonable as to shield him from liability under qualified immunity. These issues, therefore, are more appropriately left for the jury to resolve, demonstrating that summary judgment is inappropriate at this stage for either party.

### 2. Defendants Patterson and Brown

Defendants Patterson and Brown separately move for summary judgment against Plaintiff Jackson as to this count, arguing that the force used was necessary

to assist Billingslea as he took Jackson down outside of the gas station (Patterson) and then inside the gas station after he was handcuffed (Brown). In response, Jackson asserts that both Defendants acted unreasonably and violently as they attempted to hold him down on the ground.

As for Defendant Patterson, each party again presents two starkly contrasted accounts, and both cite to *Lyons* as support for their argument. *Lyons v. City of Xenia*, 417 F. 3d 565 (6th Cir. 2005). In *Lyons*, the Sixth Circuit reversed the district court's denial of qualified immunity, holding that the officers' struggle to subdue a woman in her home, including a tackle to the ground, was reasonable under the circumstances. *Id.* at 577. Patterson analogizes himself to the responding officer in *Lyons*, who was "responding to a distressed call for backup," witnessed the plaintiff and officer "screaming at each other," and reasonably tackled the plaintiff to the ground in response. *Id.* In his deposition, however, Patterson states that he was "sitting in the car, s[aw] the scuffle at the door, so [he] immediately went to assist [his] partner." ECF No. 181-17, PageID.9023. Unlike the officer in *Lyons*, Patterson witnessed the interactions precipitating the force, suggesting that he had enough context to determine that force was being disproportionately wielded by his partner. Under these facts, a jury could find that the force Patterson used with Billingslea to tackle Jackson to the ground and hold him there was unjustified and excessive. Summary judgment against Patterson is therefore denied.

16

Defendant Brown, on the other hand, arrived on the scene as backup after receiving "a call of an assault on a police officer."  ECF No. 181, PageID.8194. Jackson alleges that Brown "violently flipp[ed] Jackson over multiple times when he was handcuffed and subdued" on the floor of the gas station convenience store. ECF No. 191, PageID.10187.  In the light depicted by Brown's body camera video, Brown's uses of force do not appear unreasonable under the circumstances.  Jackson, while handcuffed, continually attempts to roll onto his side or stomach with increasing agitation, despite Brown's commands to the contrary.  Brown used a proportional amount of force to keep Jackson still and prevent him from using his legs, especially as the situation could have escalated again when Billingslea yelled back at Jackson.  ECF No. 183-4 at 1:13.  Accordingly, the video footage does not depict Brown using an unreasonable amount of force to subdue Jackson, and summary judgment is granted in his favor.

### 3. Defendant Craig

Defendant Craig argues that he is entitled to summary judgment because he "was not physically present for the interactions between the officers, Craft, and Jackson that they claim are unconstitutional," and that he cannot be held liable through a *respondeat superior* theory.  ECF No. 181, PageID.8191.  The Court agrees.

Plaintiffs have listed Craig in thirteen counts in their Third Amended Complaint (Counts I, II, III, V, VI, VIII through XIV, XVI). He was not, however, physically present during any of the encounters on April 2016, June 2016, December 2016, March 2017, or May 2017. Nevertheless, Plaintiffs argue that as Billingslea's supervisor, Craig failed to investigate citizen complaints against Billingslea and "gave the green light to Billingslea to commit constitutional violations and at the minimum authorized, approved, or knowingly acquiesced in his unconstitutional behavior." ECF No. 191, PageID.10183.

There is no allegation in the Complaint that Craig personally detained, arrested, prosecuted, or imprisoned either Jackson or Craft. Accordingly, Plaintiffs cannot pursue a theory of vicarious liability as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, because there is no genuine issue of fact that Defendant Craig violated the Constitution through his own individual actions, he is entitled to summary judgment on all of Plaintiff's Section 1983 claims in which he is named (Counts I, II, III, V, VI, VIII through XIV, XVI). Additionally, as discussed *infra* subsection Q, Plaintiffs' *Monell* claim does not survive against Craig on a vicarious liability theory and he is granted summary judgment on Count XVII as well.

## C. Fourth and Fourteenth Amendment Unlawful Arrest (Count II)

Defendants Billingslea, Patterson, Bines, and Bailey move for summary

judgment on both Plaintiffs' claims that they were unlawfully arrested during the

May 31, 2017 incident.[2]

In order to prove a false arrest claim under the Fourth Amendment, a plaintiff

must establish that the arresting officers lacked probable cause to arrest him at the

time. *See Fridley v. Horrighs*, 291 F. 3d 867 (6th Cir. 2002). Further, under an

unlawful detention analysis, "[i]f a subject is unarmed, but nonetheless presents a

risk to officer safety, handcuffing and detention in a cruiser may still be reasonable."

*Kowolonek v. Moore*, 463 F. App'x 531, 536 (6th Cir. 2012); *see also Standifer v.*

*Lacon*, 587 F. App'x 919, 922 (6th Cir. 2014) ("Police officers may constitutionally

handcuff someone as a 'safety precaution,' even when they are 'merely detaining,

but not arresting' the person."). This is not to say that officers may handcuff

detainees in all circumstances. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 840

---

[2] In Plaintiffs' Response to the City Defendants' motion, Craft states he was "handcuffed by Bailey, Bines, and Patterson and placed in a squad car." ECF No. 191, PageID.10190. It does not appear that Craft intends to allege this Count against Billingslea. Further, Plaintiffs' Response for this Count regarding Jackson's arrest only addresses conduct by Billingslea and Patterson. Plaintiffs' Complaint, however, alleges unlawful arrest of Jackson and Craft against Billingslea, Patterson, Bailey, and Bines all together. In light of the arguments in each party's motions, the Court reads this Count as: (1) Craft alleging unlawful detention by Patterson, Bailey and Bines, and (2) Jackson alleging unlawful arrest by Billingslea and Patterson. Summary judgment is granted for Defendants on both (1) and (2).

(6th Cir. 2005) (finding *Terry*[3] violation where defendant failed to point to "one single fact which supports a concern for officer safety" in handcuffing child bicyclists for riding double). However, detention and handcuffing may be permissible where there is concern for officer safety or the suspect is a flight risk. *Kowolonek*, 463 F. App'x at 536–37.

As an initial matter, it is disputed whether Craft was arrested during this encounter, or if he was just briefly detained in the back of the patrol car. Bailey's body camera footage indicates that Bailey told Craft he was under arrest and going to jail. ECF No. 181-23. According to the video and his deposition, however, Craft eventually exited the vehicle, was never issued a ticket, and walked away from the scene to call Jackson's family. *See* ECF No. 181-3, PageID.8434. Given that he was eventually free to leave the scene and in fact did so, it appears that Craft's unlawful arrest allegation is more properly analyzed as an unlawful detention, also under the Fourth Amendment.

Craft argues that he was unreasonably detained because, "by videotaping from a distance and then standing outside waiting for his cell phone to be returned to him, [he] was not interfering with a police investigation nor in any way could he have posed a risk of flight or violence to the officers." ECF No. 191, PageID.10190. The surveillance video and Craft's own cell phone video, however, contradict that

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

20

statement.  Patterson tells Craft multiple times to back up away from the store while Billingslea is attempting to handcuff Jackson.  *See* ECF No. 183-3 at 1:38, 2:05.  At that point, the altercation remained dangerous; it was reasonable for Patterson to request that Craft remain outside of the store until the arrest was completed.  Craft did not comply, however, and the Defendants Patterson, Bines, and Bailey eventually handcuffed and detained Craft in one of the patrol vehicles.  With the unpredictability and violence of the altercation in the convenience store, it was reasonable under *Kowolonek* for the officers to detain Craft until it was safe again for all officers and individuals present.  Accordingly, the brief detention was appropriate under the circumstances, and summary judgment will be granted for Defendants Patterson, Bailey, and Bines for Count II.

Additionally, Plaintiffs' allege that Billingslea failed to intervene while Craft was detained.[4]  But while Craft was speaking with Patterson, Bines, and Bailey, Billingslea was not present—he was still in the store with Jackson.  Craft has not alleged sufficient facts to demonstrate Billingslea had observed Craft's detention, had the means to intervene, or that the detention was unlawful.  Summary judgment is therefore granted for Defendant Billingslea on Count II and XI regarding intervention.

---

[4] Plaintiffs appear to allege Billingslea's failure to intervene in Craft's detainment in both Counts II and XI.  The Court's ruling here regarding Billingslea's failure to intervene applies to both counts.

Unlike Craft, Plaintiff Jackson was formally arrested and taken into custody. Jackson argues that "no such criminal investigation, probable cause, or reasonable suspicion actually existed" for Billingslea to arrest him.   ECF No. 191, PageID.10191.   The Court agrees with Billingslea, however, that the store surveillance video clearly shows Jackson's right fist making contact with Billingslea's face and/or chest.  Regardless of whether Billingslea initially provoked this altercation, the video depicts an assault against a police officer, which amounts to sufficient probable cause to arrest Jackson.  Accordingly, summary judgment is granted in favor of Defendants Billingslea and Patterson for Count II.

## D. Fourth Amendment Unlawful Seizure of Cell Phone (Count III)

In Count III, Craft alleges that Defendants Billingslea, Patterson, Mana, and Hill unlawfully seized his cell phone containing a video of the incident in violation of the Fourth Amendment.  ECF No. 72, PageID.947-948.  The City Defendants move for summary judgment on this Count, arguing that Hill, Bailey, and Mana had justification for the seizure.  Craft responds by asserting that Hill and Bailey acted unreasonably by seizing the phone.  Billingslea separately seeks summary judgment on this Count, stating that there was probable cause to seize the cell phone.

The Fourth Amendment does not provide an absolute protection against all seizures—only unreasonable seizures. The governing standard for Fourth Amendment rights is whether the police officers had probable cause for the

seizure.  *See U.S. v. Place*, 462 U.S. 696, 702-03 (1983).  Therefore, Defendants only violated Plaintiff's Fourth Amendment right if they seized Craft's cell phone without probable cause.

### 1.  Defendants Billingslea and Hill

Defendants cite to *McClain*, asserting that the seizure of Craft's cell phone was justified under the exigent circumstance exception.  *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005).  The Sixth Circuit has identified one of these emergency situations as the potential for the imminent destruction of evidence.  *Id.* Defendants additionally argue that Hill needed to control the active crime scene and only briefly detained Craft's cell phone.  ECF No.181, PageID.8197.  Defendants conclude that the cell phone's seizure was appropriate because "it is reasonable to believe that any incriminating actions that may be on the phone related to Craft or Jackson's actions would be deleted by Craft."  ECF No.151, PageID.5149.

Defendants Billingslea and Hill, however, fail to identify any actions by Craft that would indicate he was planning to delete the cell phone video.  Neither Defendant has pled sufficient facts to demonstrate that there was imminent danger of evidence destruction by Craft, undermining their claims that there was either probable cause or an emergency situation necessitating seizure.  For these reasons, the Court does not conclude as a matter of law that Defendants lawfully seized

Craft's cell phone, as a genuine issue of material fact exists.  Therefore, neither Hill nor Billingslea are entitled to summary judgment on Plaintiffs' Count III.

### 2.  Defendant Patterson

While Patterson is alleged as a defendant for this Count in Plaintiffs' Third Amended Complaint, neither party addresses Patterson's involvement in the seizure of Craft's cell phone.  A determination of summary judgment is therefore improper at this stage and Count III remains viable against Defendant Patterson.

### 3.  Defendant Mana

The City Defendants state that there is "simply no factual basis that Defendant Mana seized Plaintiff Craft's cell phone, nor that he had the opportunity and failed to prevent the seizure and thus had the opportunity to intervene."  ECF No. 181, PageID.8198.  Plaintiffs fail to respond to Defendants' argument for this Count, and the only discussion of Mana's failure to intervene relates to Count XI and Craft's detainment, not this Count.  "District courts is this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in response to a motion for summary judgment."  *See, e.g., Williams v. Reg'l Adjustment Bureau*, No. 10-2305-STA-TMP, 2012 WL 4321291, at *14 (W.D. Tenn. Sept. 19, 2012); *Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F.Supp.2d 812, 839 (E.D. Mich. 2008).  Considering the arguments presented and Mana's body camera footage, the evidence does not demonstrate that Mana seized Craft's phone, and Craft fails to show that Mana knew about the seizure or had the means to intervene.  Accordingly, there is

24

no genuine dispute of material fact and summary judgment is granted for Mana for Count III.

### 4. Defendant Bailey

The Court notes that Bailey is not named as a defendant in this Count in Plaintiffs' Third Amended Complaint, even though he is discussed in the City Defendant's motion and Plaintiffs' Response. *See* ECF No. 181, PageID.8197; ECF No.191, PageID.10192. As this Count is not alleged against this Defendant, there is no need to resolve whether summary judgment is proper against Bailey here.

### E. Fourth Amendment Unlawful Cell Phone Search (Count IV)

In Count IV, Craft alleges that Defendants Bailey and Mana unlawfully threatened Craft and unconstitutionally searched the contents of his cell phone. Bailey and Mana argue that summary judgment is warranted because Craft consented to the search of his phone. While Billingslea addresses this Count in his motion, Plaintiffs do not allege this count against him. The Court therefore need not consider whether summary judgment is appropriate here as to Billingslea.

A search is not unreasonable under the Fourth Amendment "if an individual with a privacy interest in the item to be searched gives voluntary consent." *U.S. v. McCauley*, 548 F. 3d 440, 446 (6th Cir. 2008). "The determination of whether consent was valid is a fact-specific inquiry that must be determined by the totality of the circumstances." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999).

Only consent "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion" will suffice. *Id.* (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). "Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996), *abrogated on other grounds*, *Muscarello v. United States*, 524 U.S. 125, 138 (1998).

Here, there is an issue of material fact as to whether Craft gave consent to Defendants Bailey and Mana before they searched his cell phone. From Craft's perspective, Bailey states that he is placing Craft under arrest and tells him he is going to jail because he was not complying with Bailey's order to move away from the store. ECF No. 181-23 at 3:07. Craft is placed in the back of the patrol vehicle and testified in his deposition that he was then forced to unlock his phone. ECF No. 181-3, PageID.8429. Defendants, however, state that Craft readily gives consent to the search of his phone by "indicat[ing] that a fingerprint is required to open the phone, and voluntarily tr[ying] to open the phone with his fingerprint." ECF NO. 181, PageID.8198.

26

Under a totality of the circumstances, a juror could find that Craft was under duress and did not believe he was free to refuse Bailey's order to unlock the cell phone.  There is a genuine dispute whether Craft voluntarily provided Bailey with his fingerprint and passcode, and summary judgment will therefore be denied as to Bailey.  Neither Mana's patrol vehicle video nor Bailey's body camera video, however, show Mana was involved with the search of Craft's cell phone.  As Plaintiffs have not produced any substantive evidence to support their claim against Mana here, Mana is entitled to summary judgment on Count IV.

### F.  First Amendment Right to Record the Police (Count V)

In Count V, Craft claims that Defendants Billingslea, Patterson, and Hill violated his First Amendment right to record video of police officers in a public place.  ECF No. 72, PageID.949-950.  Craft moves for summary judgment on this Count, claiming that the right to film police encounters is clearly established.  In their cross-motions for summary judgment, Billingslea, Patterson, and Hill argue that Craft was not unreasonably prevented from recording the incident and that the right has not been clearly established in this Circuit.

"[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978).  The protections of the First

Amendment include "news gathering," *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972), and "the free discussion of governmental affairs," *Mills v. State of Ala.*, 384 U.S. 214, 218 (1966).   The First Amendment's protections, however, are not absolute.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) ("Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.").  The Supreme Court and the Sixth Circuit have not directly addressed the issue of whether there is a First Amendment right to record police officers in public spaces, but it is a clearly established right in the First, Seventh, Ninth, and Eleventh Circuits.  *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

Defendants cite to this Court's prior decision in *Palmer v. Allen*, which held that "the right to secretly film law enforcement officers at a traffic stop" was not a clearly established right "in Michigan as of August 2012."  *Palmer v. Allen*, 2016 U.S. Dist. LEXIS 80168 at *19 (E.D. Mich., June 2016).  Defendants also cite to a 2018 Report and Recommendation from Magistrate Judge Majzoub where she recommends that the Court find there is no clearly established right to videotape police officers when the person recording interferes with the investigation and creates a safety concern. *Davis-Bey v. City of Warren*, No. 16-CV-11707, 2018 WL

28

895394, at *6 (E.D. Mich. Jan. 16, 2018), *report and recommendation adopted*, No. 16-CV-11707, 2018 WL 878879 (E.D. Mich. Feb. 14, 2018).  It is important to note, however, that this Report and Recommendation was adopted by Judge Levy "insofar as it determines that there is no constitutional right to interfere with a lawful arrest, regardless of whether the person interfering with the arrest is also filming the arrest." *Davis-Bey v. City of Warren*, No. 16-CV-11707, 2018 WL 878879, at *1 (E.D. Mich. Feb. 14, 2018).  The holding of the case is specific to its facts and does not stand for the principle that the right to videotape police officers in public spaces is not clearly established.

Further, Plaintiffs cite to a Judge Parker case from 2017, which held that there is "First Amendment protection for creating audio and visual recordings of law enforcement officers in public places," subject to reasonable restrictions.  *Richards v. City of Detroit*, No. CV 15-12211, 2017 WL 1954404, at *7 (E.D. Mich. May 11, 2017).  Defendants note that the defendants in Richards did not contest that this right exists, whereas they are contesting that here.  *Id.*  Finally, Defendants cite to a case in a sister district court that held "the right openly to film police carrying out their duties is not so clear cut that it is proper in *this* case to withhold qualified immunity as to the First Amendment claim."  *Crawford v. Geiger*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015), *aff'd in part, rev'd in part and remanded on other grounds*, 656 F. App'x 190 (6th Cir. 2016) (emphasis in original).  Defendants fail to note,

however, that the *Crawford* court found that "there is a First Amendment right openly to film police officers carrying out their duties in public," subsequently affecting the establishment of that right in the future. *Id.*

Upon consideration of the briefings and the existing case law on this issue, the Court finds that there is a clearly established First Amendment right to openly record police officers in public spaces. Cell phone use, especially to document everyday encounters, has become ubiquitous in the twenty-first century. The video recording capacity of a cell phone has also improved dramatically over the past decade, and citizens increasingly choose to record interactions they witness or experience with the police. Given these circumstances, as well as the holdings in other Circuits, there now exists a clearly established First Amendment right to openly film police officers carrying out their duties, subject to reasonable restrictions.

Neither party here has presented evidence that indicates this issue is so one-sided that they must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. A reasonable juror must consider the factual disputes present and determine if the Defendants infringed upon Craft's First Amendment right to record, or if Craft was only subject to reasonable restrictions to prevent interference with police activities. With these material facts remaining in dispute, summary judgment is denied for both Plaintiffs and Defendants Billingslea, Patterson, and Hill on Count V.

### G. First Amendment Retaliation (Count VI)

Here, Craft claims that the Defendant officers retaliated against him while he was exercising his First Amendment right to record the police in public. Defendants Billingslea, Patterson, Hill, and Mana move for summary judgment on this Count by asserting that Craft has not alleged any adverse action that satisfies the retaliation analysis.

A First Amendment retaliation claim requires proof that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 645 (6th Cir. 2015).

In this case, Craft contends that he engaged in the constitutionally protected conduct of filming law enforcement officers in a public place. As discussed *supra*, the Court held that this right is clearly established, satisfying the first prong. The parties dispute whether the adverse actions alleged are sufficient to withstand the summary judgment stage. Here, Craft (1) was told by Billingslea that he would be maced if he did not back away from the scene, (2) had his phone taken away and subsequently damaged, and (3) was detained in the back of a police vehicle. Considering this evidence in the light most favorable to the non-moving party here,

it is plausible that a search and seizure of Craft's cell phone, coupled with the above facts, was more than a *de minimus* injury. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012). Accordingly, it is proper for a jury to interpret these events and determine whether Craft suffered adverse actions that derived from his video recording of the encounters. Summary judgment will therefore be denied as to Count VI.

### H. First and Fourth Amendment Property Deprivation (Count VII)

Craft next alleges in Count VII that four of the Defendant officers violated his First and Fourth Amendment right "to stand in public and smoke a cigarette" after he was "ordered . . . to extinguish [his] cigarette." ECF No. 72, PageID.951-952.

This constitutional claim does not hinge on Craft's words but rather on Craft's conduct, which was standing outside of the gas station store while smoking a cigarette. "To bring a free-speech claim regarding actions rather than words, claimants must show that their conduct conveys a particularized message and the likelihood is great that the message will be understood by those who view it." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 388 (6th Cir. 2005) (internal citations and quotations omitted). Craft argues that his conduct meets this standard, as he "conveyed a particular message of freedom to stand and smoke a cigarette where there is no smoking prohibition." ECF No. 191, PageID.10196. That message, however, is neither particularized nor clearly evident to others. Defendants note that,

32

while the Sixth Circuit has not squarely addressed this issue, other circuits have found that smoking is not constitutionally protected conduct. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008); *Gallagher v. City of Clayton*, 699 F.3d 1013, 1021 (8th Cir. 2012). This Court agrees with Defendants and finds that summary judgment is appropriate on this claim.

Additionally, there is a dispute whether the officers ordering Craft to extinguish his cigarette was a Fourth Amendment seizure of his property. This exchange, which is depicted on Defendant Bailey's body camera video, shows that Craft consented almost immediately to the officers' direction to put out his cigarette. *See* ECF No. 181-23. As there was consent, Bailey's actions did not amount to an unlawful seizure under the Fourth Amendment, nor did the surrounding officers fail to intervene in any unconstitutional conduct. Accordingly, summary judgment will be granted for Defendants for Count VII.

### I. First Amendment Store Entry Prevention (Count VIII)

In Count VIII, Craft and Jackson allege that Defendant Billingslea prevented their entry into the gas station store in violation of their First Amendment rights. ECF No. 72, PageID.952-953.

As with the previous Count, Plaintiffs' First Amendment claim concerns conduct—this time, regarding entry into a private business. Plaintiffs' argument similarly fails here; contrary to their assertions, walking into a gas station store does

not clearly "convey a message of freedom" to others observing the conduct.  ECF No. 164, PageID.7272; *Blau*, 401 F.3d at 388.  Without meeting that threshold, Plaintiffs fail to establish that their conduct was constitutionally protected. Accordingly, summary judgment is granted in Billingslea's favor here.

### J.  Fourth Amendment Unlawful Vehicle Seizure (Count IX)

In Count IX, Jackson alleges unlawful seizure of his vehicle by all nine police Defendants.  ECF No. 72, PageID.953.  The Defendants all argue that summary judgment is proper here because Jackson's vehicle was towed pursuant to a lawful arrest.  As with the analysis in Count III, *supra*, Defendants only violated Plaintiff's Fourth Amendment right if they seized Jackson's vehicle without probable cause.

In Count II, the Court determined that probable cause existed for Jackson's arrest after he swung his arm at Billingslea.  One of the consequences of this lawful arrest is that Jackson's vehicle would be towed.  Therefore, Jackson's Fourth Amendment rights were not violated because Defendants' seizure of his vehicle was reasonable.  Summary judgment is granted in all Defendants' favor with respect to this Count.

### K. Fourteenth Amendment Failure to Provide Medical Treatment (Count X)

Jackson also claims that his Fourteenth Amendment rights were violated by the Defendants' deliberate indifference to his serious medical needs after he was

maced and "denied any form of medical treatment."  ECF No. 164, PageID.7275.

All parties move for summary judgment on this Count.

Claims brought by arrestees alleging deliberate indifference are analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).  However, the standard of review for a due process claim is identical to an Eighth Amendment denial of medical care claim.  *See Barber v. City of Salem*, 953 F. 2d 232, 235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F. 2d 720, 723 (6th Cir. 1985).

The Sixth Circuit employs a two-part test to analyze claims of deliberate indifference.  *Estate of Carter v. City of Detroit*, 408 F. 3d 305, 311 (6th Cir. 2005).  Specifically, plaintiff must satisfy an objective and subjective test to make out his claim.  The objective prong requires a demonstration that plaintiff was exposed to a sufficiently serious risk of harm.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The subjective component requires that the defendants knew of and disregarded a substantial risk of serious harm to the detainee's health and safety.  *Id*. at 835-37; *see also Terrance v. Northville Regional Psychiatric Hospital*, 286 F. 3d 834, 843 (6th Cir. 2002).  It is not enough if the official should objectively have been aware of the risk to the detainee's health and safety, rather "[t]he official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Jackson was exposed to a risk of injury when he was maced in the gas station store by Billingslea. If either the officers or Moore, the medic, did not offer to flush out his eyes, Jackson could have faced a substantial risk of serious harm. Body camera footage indicates, however, that the officers attempted to administer aid, but Jackson refused to exit the vehicle or have his eyes flushed when asked. *See* ECF No. 181-21. Billingslea approached Jackson and told him to lean out of the car so that he can flush his eyes. ECF No. 183, PageID.9333. Jackson instead replied that he wanted an ambulance or to talk to a specific sergeant. *Id*. Plaintiff appears to argue that the police and fire department were working together to keep Jackson in pain by denying medical care, but these bare allegations do not meet the subjective threshold required by the deliberate indifference standard. Furthermore, as there was no constitutional violation, the other officers present cannot be held on a failure to intervene claim. Therefore, Plaintiff's motion here is denied and summary judgment is granted as to all Defendants on Count X.

### L. Failure to Intervene (Count XI)

In Count XI, Craft seeks summary judgment against Patterson for failure to intervene when Billingslea prevented his ability to record the encounter, while Jackson seeks summary judgment against Patterson for failure to intervene during

Billingslea's use of excessive force.  In the City Defendants' cross-motion, each Defendant moves for summary judgment, arguing that most of the officers arrived on the scene too late to prevent any alleged wrongdoing.  This Count was already granted in Billingslea's favor in Count II, where his failure to intervene was alleged.

"Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  "Where an act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied." *Pennington v. Terry*, 644 Fed. App'x 553, 548 (6th Cir. Mar. 23, 2016) (noting that there is generally insufficient time to intervene in types of excessive force lasting less than ten seconds); *see also Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (holding that an officer and nurse lacked opportunity to intercede in a takedown that lasted no more than ten seconds).

### 1.  Plaintiff Craft Against Defendant Patterson

Craft has not established here that Patterson was aware of his interaction with Billingslea, or that Patterson had an opportunity to intervene between them.  The cell phone footage depicts Patterson working to hold Jackson down while Billingslea moves Craft back several feet from the scene.  *See* ECF No. 181-16.  Plaintiff has

failed to demonstrate that Patterson either observed any force being used against Craft or had the means to intercede.  Summary judgment will therefore be granted for Patterson on this Count.

### 2.  Plaintiff Jackson Against Defendant Patterson

Here, it is unclear how much of the Jackson-Billingslea altercation Patterson witnessed prior to Jackson's takedown inside the gas station convenience store.  It is not disputed that Patterson was physically present for the altercations both outside and inside of the store, but the parties disagree about whether enough time lapsed for Patterson to intervene in the scuffle.

The Court finds that a reasonable juror could determine that Patterson had enough time to assess the situation and intervene during Billingslea's uses of force against Jackson.  While the physical altercations between the two occurred in a short time frame, Plaintiffs and Billingslea and Patterson were involved in heated interactions for several minutes.  *See* ECF No. 183-3 (Showing Craft's cell phone video is over three minutes long).  The evidence indicates that Patterson witnessed, at minimum, (1) Billingslea mace Jackson, (2) take him down, and (3) apply strikes to Jackson on the ground, suggesting that Patterson was near enough to have intervened to protect Plaintiff from Billingslea's actions.

It has long been the law in this Circuit that a police officer has a duty to protect a citizen against the unconstitutional conduct of another officer.  *Bruner v. Dunaway*,

684 F. 2d 422, 426 (6th Cir. 1982) (holding that a police officer has a duty to try and stop another officer who uses excessive force against a person in the officer's presence).  Further, while Defendants argue that "each use of force was well under 10 seconds in length," this piecemeal approach to determining the total amount of time force was used is unpersuasive.  Looking at the totality of the circumstances, Patterson was present at the outset of this encounter, had multiple minutes to assess his partner's behavior towards Plaintiff, and witnessed well over ten seconds of Billingslea's force against Jackson.  Accordingly, a factual dispute exists for this Count and summary judgment regarding Patterson' failure to intervene will be denied.

### 3.  Plaintiffs Against Defendants Bailey, Hill, Mana, Hines, Brown, and Mays

While the altercations occurred between Plaintiffs and Billingslea and Patterson, the various video footage available depicts the remaining officers arriving after Jackson was restrained on the convenience store floor.  None of these Defendants were on the scene long enough to assess whether Plaintiffs' rights were being violated prior to their arrival.  Accordingly, as there was no opportunity to intervene, summary judgment is denied for Plaintiffs and granted for the remaining Defendants on Count XI.

## M. Fourth Amendment Unlawful Search and Arrest in April 2016 (Count XII)

In Count XII, Craft alleges that Billingslea, Patterson, and Mana unlawfully searched and arrested him while standing in the vicinity of 5920 Audubon Road. ECF No. 72, PageID.939.  All Defendants move for summary judgment on this Count.

The evidence presented by the parties about the April 2016 event creates sufficient disagreement as to preclude a summary judgment determination at this stage.  Defendants argue that Craft was standing in the street and turning away from them while clutching his right side.  ECF No. 181, PageID.8208.  These facts, Defendants argue, constitute reasonable suspicion of a civil infraction and a reasonable belief that Craft was armed, warranting a legal *Terry* search.  *Id.*  Craft testified in his deposition, however, that he was standing in his stepmother's driveway, not the street, and that he was thrown to the ground and searched without legal justification.  ECF No. 181-3, PageID.8329.  If Craft was standing on the sidewalk or driveway, the Defendants would have lacked reasonable suspicion to detain and search Craft at that time.  Given this dispute between the parties, it is more appropriate for a jury to make a credibility determination about the events on April 2016.  Therefore, Defendants' motion for summary judgment is denied for Count XII.

## N. Fourth Amendment Unlawful Detention and Search in June/July 2016 (Count XIII)

Craft also brings an unlawful detention and search claim against Billingslea and Patterson concerning encounters in June or July of 2016.  ECF No. 72, PageID.955.  Billingslea and Patterson move for summary judgment.  In the first incident, Craft alleges that Billingslea "acted out a karate-style kick" toward Craft's direction and walked away without touching him, with Patterson passively observing throughout.  *Id.* at PageID.942.  In the second incident, Craft states that he was walking to the store with his brother and that they "were stopped and frisked by Officer Billingslea and Patterson."  ECF No. 181-3, PageID.8367.

Here, Plaintiff presents vague descriptions of the encounters.  There is no police or video documentation of either of these interactions, nor are specific dates identified.  The Court is unpersuaded by Craft's conclusive argument that "[c]onfronting and harassing people with physical intimidation in public places without fear of consequences is evidence that [Billingslea] would not have acted such without the authority given to him by the City of Detroit."  ECF No. 191, PageID.10205.  Without factual development or documentation about either June and/or July 2016 incident, Craft has not established that he can survive summary judgment on this Count.  Accordingly, summary judgment is granted for Billingslea and Patterson on Count XIII.

### O. Fourth Amendment Unlawful Arrest (Count XIV) and Failure to Intervene in December 2016 (Count XV)

Plaintiff Craft brings a similar unlawful search and arrest claim against Billingslea and Patterson for the encounter in December 2016. ECF No. 72, PageID.956. As with the previous Count, Plaintiff cannot identify a specific date that the event occurred or provide evidence sufficient to withstand the summary judgment stage against either Defendant. There is no police report or video documentation of this encounter, and Craft's deposition testimony is generalized, stating that he "think[s] Patterson searched [him], and Billingslea searched [his] brother." ECF No. 181-3, PageID.8371. This statement, along with Craft's argument that this is "another episode of the 'personal vendetta'" the Defendants have against Craft, has not established that a Fourth Amendment violation occurred here, or that an officer failed to intervene in that violation. ECF No. 191. PageID.10205. Therefore, with the facts developed at this stage, the Court will grant summary judgment for Billingslea and Patterson for Counts XIV and XV.

### P. Fourth Amendment Unlawful Search and Arrest in March 2017 (Count XVI)

Craft brings another claim for unlawful search and arrest, this time from a March 2017 incident involving Billingslea, Patterson, Mana, Hill, Mays, and Bines. ECF No. 72, PageID.956. Defendants move for summary judgment on this Count.

As with the April 2016 encounter, Defendants argue that Craft was committing a civil infraction because his vehicle was parked with its left wheels on a curb, in violation of M.C.L. § 257.675.  ECF No. 181, PageID.8209.  They assert that this established reasonable suspicion to "stop[ ] the vehicle and its occupants to investigate."  *Id.*  Once the officers approached, Defendants state that Craft began to yell, which created probable cause to arrest him for disorderly conduct and conduct a search incident to arrest.  *Id.*  In contrast, Craft testified that he was in the process of pulling out of his driveway and stopped to let two patrol vehicles go by when the officers stopped them.  ECF No. 191, PageID.10203.  Craft suggests that this was therefore not a civil infraction because he was not parked but simply momentarily stopped.  *See* ECF No. 181-3, PageID.8448-8449.

Unlike the incident in April 2016, however, there is ambiguity here about whether Craft's car was parked or just temporarily stopped to let the officers go by.  With this ambiguity, it is plausible that the Defendants interpreted the stopped vehicle as parked—especially since it was the middle of the night and therefore dark outside—which would amount to a civil infraction and create reasonable suspicion to approach the vehicle.  As the qualified immunity analysis "provides ample room for mistaken judgments," the Defendants' conduct was not unreasonable under the circumstances.  *Meeks v. City of Detroit*, 727 F. App'x 171, 176 (6th Cir. 2018)

(quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)).  Accordingly, summary judgment will be granted for all Defendants on Count XVI.

### Q. Supervisory and Municipal Liability (Count XVII)

Plaintiffs move for summary judgment on this Count based on two grounds: (1) against Defendant Craig under a theory of supervisory liability, and (2) against the City of Detroit based on the City's alleged failure to train and supervise its officers regarding excessive force.  ECF No. 183, PageID.9349-9350.  The City Defendants separately seek summary judgment on this issue, arguing that Plaintiffs failed to plead facts that would put the Defendants on notice of deficient officer training and supervision.  ECF No. 181, PageID.8231.

Plaintiffs' Section 1983 claim against the City of Detroit must "demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010).  Plaintiffs must make this showing by demonstrating one of the following:

(1) the existence of an illegal official policy or legislative enactment;
(2) that an official with final decision making authority ratified illegal actions;
(3) *the existence of a policy of inadequate training or supervision*; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)).  "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'"  *Id.* (quoting *Monell*, 436 U.S. at 694).

To succeed on a failure to train or supervise claim in the Sixth Circuit, a plaintiff must prove the following:

> (1) the training or supervision was inadequate for the tasks performed;
> (2) the inadequacy was the result of the municipality's deliberate indifference; and
> (3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 Fed. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  There are two ways to demonstrate deliberate indifference.  A plaintiff could "show prior instances of unconstitutional conduct demonstrating that [a city] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).  In the alternative, a plaintiff could show "a single violation of federal rights, accompanied by a showing

that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . ." *Id*. (quoting *Bryan Cnty*., 520 U.S. at 409).

In this case, Plaintiffs proceed on a failure to train or supervise claim. Subsequently, they must demonstrate (1) failure to train or supervise, (2) deliberate indifference, and (3) relatedness. *See Ellis ex rel. Pendergrass*, 455 F.3d at 700. Thus, if the evidence presents sufficient disagreement about whether there was a failure to train or supervise City of Detroit officers, summary judgment is improper at this juncture. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.

Defendant Craig testified in his deposition that he was Billingslea's supervisor for many years, including at the time of the May 2017 incident. ECF No. 181-28, PageID.9191. His role as a supervisor was to "[m]ake sure [his] officers follow policies and procedures" and "[t]rain them on different aspects of the job." *Id*. Craig testified that there was nothing that Billingslea did, in his opinion, that violated Detroit police policy or the law. *Id.* at PageID.9200. He also stated that he was unaware of any complaints regarding Billingslea's behavior between 2014 and 2017. *Id.* at PageID.9195. Additionally, the City Defendants state that "each Defendant has recently received use of force training," citing to the City of Detroit's Interrogatory Responses. *See* ECF No.186-33. The Responses indicate that Billingslea last received use of force training on August 11, 2017. *Id*. at

46

PageID.10107.  Prior to this, Billingslea's last use of force training was recorded on his employee profile in 2015.  ECF No.191-12, PageID.10884.

The facts that Plaintiffs present are insufficient to maintain a *Monell* claim against the City of Detroit.  In their motion, Plaintiffs cite two separate instances where non-party Detroit police officers were convicted of assault and battery, arguing that these events, together with Plaintiffs' incidents, demonstrate a pattern of misconduct.  ECF No. 183, PageID.9351.  Both events cited, however, occurred after the May 2017 encounter at the heart of Plaintiffs' case.  Plaintiffs' argument here must therefore fail because they do not "show prior instances of unconstitutional conduct" that would put the City of Detroit "clearly on notice that the training . . . was deficient and likely to cause injury."  *Plinton*, 540 F. 3d at 464. Further, this claim cannot survive based solely on Craig's testimony that he saw no issue with Billingslea's actions; Craig's opinions do not bear on the constitutionality of his officers' conduct and they do not establish that the City of Detroit "maintained a training program through high-ranked officials that train their officers to commit criminal assaults."  ECF No. 191, PageID.10206.  Accordingly, Plaintiffs have not demonstrated that there is a genuine issue of material fact for a jury to consider here, and summary judgment is denied as to Plaintiffs and granted for Defendants on this Count.

## V. CONCLUSION

For the reasons discussed herein, the Court will DENY Plaintiffs' Motion for Summary Judgment [#183], GRANT IN PART and DENY IN PART the City Defendants' Motion for Summary Judgment [#181], and GRANT IN PART and DENY IN PART Defendant Billingslea's Motion for Summary Judgment [#151].

The remaining Counts and Defendants are as follows:

Count I: Excessive Force (Defendants Billingslea and Patterson)
Count III: Unlawful Seizure (Defendants Billingslea, Patterson, and Hill)
Count IV: Unlawful Search (Defendant Bailey)
Count V: Unlawful Search (Defendants Billingslea, Patterson, and Hill)
Count VI: Retaliation (Defendants Billingslea, Patterson, Hill, and Mana)
Count XI: Failure to Intervene (Defendant Patterson)
Count XII: Unlawful Search and Arrest (Defendants Billingslea, Patterson, and Mana)

**IT IS SO ORDERED.**

 

_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  May 8, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 8, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager