# EXHIBIT 2



SEWARD HENDERSON PLLC                           www.SewardHenderson.com

August 20, 2019

*VIA EMAIL & FIRST CLASS MAIL*

Solomon M. Radner, Esq.
**EXCOLO LAW, PLLC**
26700 Lahser Road, Suite 401
Southfield, MI 48033

Re:   ***Craft, et al. v. City of Detroit, et al.***
      Case No.  17-12752

Dear Mr. Radner:

Enclosed please find Defendants, City of Detroit, Hakeem Patterson, Yossif Mana, Antoine Hill, Glenn Bines, David Mays II, Naim Brown, Michael Bailey, Randall Craig, and Bryan Moore's Expert Disclosure for Timothy L. McGuckin.

Should you have any questions or concerns, please do not hesitate to contact our office.  Thank you.

Sincerely,

**SEWARD HENDERSON PLLC**

*Alexandra R. Lazarow*

Alexandra R. Lazarow, Administrative Assistant

/arl
Enclosure(s)

cc:   James P. Allen, Sr., Esq. **(w/enclosures)**
      Charles S. Rudy, Esq. **(w/enclosures)**



210 East 3rd Street, Suite 212, Royal Oak, Michigan 48067
**P** 248.733.3580 **F** 248.733.3633   www.sewardhenderson.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**D'MARCO CRAFT**; and
**MICHAELE JACKSON**,

      Plaintiff,

v.

**CITY OF DETROIT, RICHARD
BILLINGSLEA, HAKEEM J. PATTERSON,
YOSSIF MANA, ANTOINE HILL,
GLENN BINES, DAVID MAYS, II,
NAIM BROWN, MICHAEL BAILEY,
RANDALL CRAIG**, and **BRYAN MOORE**,

      Defendants.

Case No. 17-cv-12752
Hon. Gershwin A. Drain
Mag. Judge Mona K. Majzoub

---

| **DEFENDANTS CITY OF DETROIT, HAKEEM J. PATTERSON, YOSSIF MANA, ANTOINE HILL, GLENN BINES, DAVID MAYS, II, NAIM BROWN, MICHAEL BAILEY, RANDALL CRAIG, AND BRYAN MOORE'S EXPERT DISCLOSURE FOR TIMOTHY K. MCGUCKIN** |
| --- |

---

**EXCOLO LAW, PLLC**
By: Solomon M. Radner (P73653)
*Attorneys for Plaintiff*
26700 Lahser Road, Suite 401
Southfield, Michigan 48033
P: (248) 291-9712
F: (866) 571-1020
P: sradner@excololaw.com

**ALLEN BROTHERS**
By: James P. Allen, Sr. (P52885)
    Charles S. Rudy (P27881)
*Attorneys for Defendant,
Richard Billingslea, only*
400 Monroe Street, Suite 620
Detroit, Michigan 48226
P: (313) 962-7777 / F: (313) 962-0581
E: jamesallen@allenbrotherspllc.com
    crudy@allenbrotherspllc.com

**CITY OF DETROIT LAW DEPARTMENT**
By: Greg Paddison (P75963)
*Attorney for Defendants*
Coleman A. Young Municipal Center
Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-0435 / F: (313) 224-5505
E: paddisong@detroitmi.gov

**SEWARD HENDERSON PLLC**
By: T. Joseph Seward (P35095)
    Michael A. Knoblock (P77544)
*Attorneys for Defendants, Patterson, Mana, Hill,
Bines, Mays, Brown, Bailey, Craig, Moore, only*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580 / F: (248) 733-3633
E: jseward@sewardhenderson.com
    mknoblock@sewardhenderson.com

**DEFENDANTS CITY OF DETROIT, HAKEEM J. PATTERSON,
YOSSIF MANA, ANTOINE HILL, GLENN BINES, DAVID MAYS, II, NAIM BROWN,
MICHAEL BAILEY, RANDALL CRAIG, AND BRYAN MOORE'S EXPERT DISCLOSURE
FOR TIMOTHY K. MCGUCKIN**

Defendants, **CITY OF DETROIT, HAKEEM J. PATTERSON, YOSSIF MANA, ANTOINE HILL, GLENN BINES, DAVID MAYS, II, NAIM BROWN, MICHAEL BAILEY, RANDALL CRAIG,** and **BRYAN MOORE**, only, by and through their undersigned counsel, submit the following as their Expert Disclosure for Timothy K. McGuckin, consistent with Fed. R. Civ. P. 26(a)(2):

1. **Expert** : Timothy K. McGuckin

   **Area of Expertise** : Use of Force

   **Report** : Please see Mr. McGuckin's report attached as Exhibit 1.

   **Compensation** : Please see witness compensation schedule attached as Exhibit 2.

   **Qualifications** : Please see Mr. McGuckin's report attached as Exhibit 1.

   **Prior Testimony** : No trial or deposition expert testimony exists in the past four years for Mr. McGuckin.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Michael A. Knoblock (P77544)
*Attorneys for Defendants, Patterson, Mana,*
*Hill, Bines, Mays, Brown, Bailey, Craig,*
*and Moore, only*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: mknoblock@sewardhenderson.com

Dated:   August 19, 2019

## PROOF OF SERVICE

I hereby certify that I served the foregoing documents and this Proof of
Service upon all counsel of record, via U.S. First Class Mail and email, on
**August 20, 2019**.

 /s/ Alexandra R. Lazarow
Alexandra R Lazarow
Administrative Assistant
**Seward Henderson PLLC**
admin-asst@sewadhenderson.com

# EXHIBIT 1

**United States District Court**

**Eastern District of Michigan**

**Southern Division**

**Craft v. City of Detroit**

**Jackson v. City of Detroit**

**Case No. 17-cv-12572**

**Expert Witness Report**

**Timothy K. McGuckin**

I, Timothy K. McGuckin, if called, will swear and testify to the following:

I began with the Lapeer County Sheriff's Office in December of 2004 where I joined as a reserve deputy. I graduated from the reserve academy in May of 2005. I was offered a full-time position in the corrections division as a corrections officer. In December of 2005 I graduated for the Michigan Sheriff's Coordinating and Training Council academy and earned my certification as a corrections officer to include, among other topics, Pressure Point Control Tactics (PPCT), Ground Avoidance, Ground Escape (GAGE) and Spontaneous Knife Defense training.

As a corrections deputy I was responsible for prisoner intake and receiving as well as maintaining the (5) separate housing pods in the general housing unit. We routinely dealt with inmates of minimum, medium and maximum-security levels. I have personally dealt with hundreds of highly intoxicated and uncooperative inmates whether it was from agitation, mental health issues, alcohol, narcotics or a combination of those factors. I have also dealt with and did intakes on hundreds of inmates that were highly intoxicated, agitated and uncooperative (both physically and verbally).

I began instructing at the Flint Police Academy in 2007. I instructed in various subjects such as; suicide awareness, report writing, ethics, workplace harassment, cultural diversity, inmate booking/release/medical screening, interpersonal communications, correctional law and custody and security. In March of that year I also obtained certification as a Crisis/hostage negotiator through the Federal Bureau of Investigation. I have also attended the Public Agency Training Council Phase 1 & 2 hostage negotiators school. In April of 2007 I received my certification as a Taser Instructor and began teaching Taser end user courses as well.

In 2008 I earned a certificate from the National Institute of Corrections Foundation for Skills and Trainers. In July of 2008 I became certified as a Field Training Officer and began instructing new deputies. In October of 2008 I became a certified Chemical Aerosol spray instructor through Oleoresin Capsicum Aerosol Training (OCAT). Also, in October of that year I attended and earned certification from the REID school of Interviewing and Interrogation.

In January of 2011 I completed training and became certified as a member of the Michigan Sheriff's association MISSION investigator team. This team, if called upon, is tasked with internal investigations within Michigan Sheriff's offices.

In 2012 I attended the Delta College public safety and Training on Semi-automatic pistol instructor course and became a firearms instructor. In March of 2012 I became an instructor with NOVA Products Incorporated as an instructor with their Remote Activated Custody and Control belt and vest system (RACC). In August of the same year I attended a Police Instructor course through the Law Enforcement Regional Training

(Cont'd)

Commission. In the fall of 2012, I began instructing at the Law Enforcement Regional Training Commission police academy. While at the academy I began teaching Prisoner Care and Treatment, Searching and Fingerprinting. In August of 2012 I was assigned to take over the training program for the corrections division of the Lapeer County Sheriff's Office where I am responsible for scheduling and recording all training hours and classes that any of our staff attended. I also conduct and oversee in house training for our staff in multiple areas.

In March of 2013 I became re-certified as a Taser instructor through Delta Community College. Later that year in September I attended the Columbus police academy and earned my Master Taser certification. Following that, in November of 2013 I received my certification as a PREA sexual assault investigator. I was also assigned and designated as the PREA coordinator for the Lapeer County Sheriff's Office.

In January 1st of 2015 I was promoted the rank of corporal. On June 1st of 2015 I received my re-certification as a Master Taser instructor, again though the Columbus Police Department. I also obtained my Taser Technical Solution & Investigation certification. On July 1st, 2015 I was then promoted to the rank of Sergeant. In December of that same year I earned a certificate from the Michigan Sheriff's Association in Internal Affairs policies and practices.

2016-2017 I continued as a corrections supervisor as well as briefly supervising the court security operations. In March of 2017 I obtained another chemical aerosol instructor certification through SABRE security Equipment Corporation.

2018- I was once again re-certified as a Master Taser Instructor and attended the Toronto Police college

I currently maintain the rank of Sergeant with the Lapeer County Sheriff's Office where I am responsible for overseeing the day to day operations on the night shift in the jail. I am also responsible for reviewing reports on anything that may have happened worth noting and medical incidents from the previous shift(s) as well as reviewing schedules.

My current qualifications and certifications are as follows:

Master Taser instructor
Chemical Aerosol instructor
Nova Stun Belt instructor
Firearms instructor
Field Training Officer
Corrections Division Training Coordinator

(Cont'd)

P.R.E.A.  Training Coordinator (Prison Rape Elimination Act 2003)
Pressure Point Control Tactics Certified (PPCT)
Ground Avoidance Ground Escape Certified (G.A.G.E.)
Spontaneous Knife Defense Certified
Chemical Aerosol Pepper Ball Deployment weapon certified
Restraint Chair Certified
Member of the Michigan Sheriff's Association of Special Investigators Team
Internal Affairs Training through the FBI Law Enforcement Development Association
F.B.I Hostage/Crises Negotiator training
Lapeer County Sheriff's Office Special Response Team (S.R.T.)
Trained in Law Enforcement Civil Liability and Management Rights
C.B.R.N.E. Training (Chemical/Biological/Radiological/Nuclear/Explosive)
W.M.D. Tactical Operations training through the National Center for Biomedical
Research and Training
Certification in the Reid Technique of Interview and Interrogation. (John E. Reid and
Associates)
Certified in Jail Gang Interview and Interrogation
Certification through the National Institute of Corrections foundation Skills for Trainers
Certified Instructor through the Michigan Sheriff's Association
Certified Instructor through the Michigan Commission on Law Enforcement Standards
Certified Instructor with the Law Enforcement Regional Training Academy (L.E.R.T.A.)
Police Academy Instructor for LERTA at Mott Community College
Certified Instructor through the Law Enforcement Regional Training Commission
(LEORTC)
Certified Instructor with the Michigan Sheriff's Coordinating and Training Council
Corrections Academy instructor Mott Community College through LEORTC
Certified instructor through Kirtland Community College
Previous instructor for Metamora Township, Flint City and Grand Blanc Township,
Lapeer township and Owosso police Departments.


I am familiar with the techniques, practices and policies involving the use of force.
My opinions are based on my training, knowledge and experience. It's also based on my
experience in training police and correctional officers in the state of Michigan.

I have reviewed the following documents, videos and reports in reference to this case:

Deposition of Antoine Hill
Deposition of Bryan Moore
Deposition of Daquan Reddix
Deposition of Darius Craft
Deposition of David Mays II
Deposition of Demetrius Scott
Deposition of D'Marco Craft
Deposition of Glenn Bines
Deposition of Hakeem Patterson
Deposition of Marilyn Craft
Deposition of Michael Baily
Deposition of Michaele Jackson
Deposition of Mohammad Almasmary
Deposition of Naim Brown
Deposition of Nicole Garrett
Deposition of Randall Craig
Deposition of Richard Billingslea
Deposition of Taronne Garret
Deposition of Yossif Mana

In car video from Yossif Mana

Glenn Bines body camera from 5/31/17
Michael Bailey body camera 5/31/17
Naim Brown body camera 5/31/17
Richard Billingslea body camera 5/31/17
Yossif Mana body camera 5/31/17

Videos referenced in Darius Craft Deposition

Video recording from the Mobile gas station

D'Marco Craft's cell phone video

2 videos prior to the Craft incident

2 dispatch recording from 5/31/17

Activity logs and reports from 5/31/17

Third Amended Complaint

Event in question:

On 5/31/17, Detroit police officers, Richard Billingslea ("Billingslea") and Hakeem Patterson ("Patterson") were at the Mobil gas station located at 17046 Harper in the city of Detroit.

While at the gas station, the two officers, both in Detroit Police Department uniforms and could easily be identified as police officers, encountered two male subjects, Michaele Jackson ("Jackson") and D'Marco Craft (" Craft").

Craft entered the gas station, made an obscene verbal comment then an obscene hand gesture and exited the store.  Billingslea replied with an obscene comment.  Billingslea then went to the door to observe Craft.  Craft then approached Billingslea and Billingslea extended his left arm to stop Craft's forward motion toward him.  Billingslea gives Craft clear directives to back up and warns him that he may be arrested.

Billingslea then briefly walks to the back of the store before returning to the store entrance.  As the door opens Jackson then attempts to go past Billingslea and while doing so makes a direct and intentional contact with Billingslea.  This, in my opinion, constituted an assault on, and obstruction of, a police officer.  Billingslea then attempts to physically remove Jackson who then resisted.  Jackson resisted and obstructed Billingslea.  This resistance then forced Billingslea, with the assistance of Patterson, to have to take Jackson to the ground.  Once on the ground Jackson continued to resist the officer's lawful commands to comply.  Jackson then calmed down enough to where Billingslea and Patterson felt they could let him up.  Once Jackson stopped resisting the force being used stopped.

Once on his feet, Jackson, again, became belligerent and disorderly prompting Billinglsea to have to follow him in the parking lot.  Jackson then made his way around to the entrance of the store and forced his way past the clerk.  Billingslea followed and attempted to stop Jackson by grabbing Jackson's right arm.  Jackson then, in a hostile and aggressive manor, quickly spun towards Billingslea forcing Billingslea to push Jackson away.  Billingslea, again, attempted to remove Jackson from the store.  Jackson was visibly agitated and out of control at this point.  Billingslea then tried to escort Jackson out of the store, Jackson then turned and swung a closed fist at Billingslea.

At this point Patterson then enters the store to assist Billingslea who then sprays Jackson in the face with some type of chemical aerosol.  The chemical aerosol delivered seemed to have little to no effect on Jackson.  Billingslea then grabs Jackson from behind and takes him to the floor.  While on the floor Jackson is again resisting the officer's lawful commands to comply.  Billingslea delivers several hand and knee strikes to Jackson while ordering him to put his hands behind his back. Jackson again refused to comply with Billingslea's lawful orders.  At this point Craft is seen re-entering the store. Craft was again, ordered out of the store by Billingslea.

(Cont'd)

Patterson can be heard giving Craft a lawful command to "back up". Patterson then walks Craft out the door. Craft, again, disobeyed the orders and came right back in. Jackson was still resisting the officers with violence. Craft can be heard saying, "Mike, stop fighting bro!", "Stop fighting Mike!". Craft then moves closer to the officers, eventually standing almost directly behind them. Craft was ordered to back off and, again, refused to obey the orders from Patterson. Craft can be heard telling Jackson to be still. A little over a minute after Billingslea requested back up, several other officers arrived. They quickly assisted Billingslea with getting Jackson under control and in restraints. Jackson was still actively resisting all officer's commands. Once in custody, Jackson continued to struggle with the officers. He was eventually brought to his feet. As the officers approached the gas station door, Jackson again started to resist and had to be physically escorted to a patrol car where he was placed in the passenger side rear seat.

Regarding the complaint:

**To Answer the First cause of action:**

Pg.25, line 180

a) Billingslea extended his arm to stop Craft's forward motion towards him. In my opinion this was not an assault. Billingslea advised Craft to back up. This is another common practice to keep a reactionary gap between an officer and a subject. Craft's conduct prior to the physical contact would lead a reasonable office to believe Craft may again be hostile or aggressive.

b) Jackson then attempted to enter the gas station by intentionally making contact with Billingslea. This action forced Billingslea to stop Jackson's forward motion by physically grabbing him and, with the assistance of Patterson, restraining Billingslea on the ground. Taking a subject to the ground when they are combative is a well-practiced technique taught to police officers. This technique helps the officer control a subject that is otherwise physically uncooperative. Billingslea and Patterson used a reasonable amount of force to subdue Jackson. Billingslea secured Jackson's left arm by holding it to the ground while also stabilizing Jackson's head while Patterson took control of Jackson's right arm.

c) After Jackson was allowed to get back to his feet, he continued his disorderly behavior and while displaying this conduct made his way back into the store. Due to Jackson's active display of hostile and aggressive behavior, Billingslea then attempted to remove Jackson from the store. Billingslea attempted to grab Jacskon's right arm. Jackson then spun around quickly in a hostile and aggressive manor. Billingslea quickly pushed Jackson away. Billingslea, again, attempted to remove Jackson by using an escort technique. This technique is another common practice used by police officers when they want a subject to walk with them in a certain direction. Billingslea simply placed his right hand on Jackson's left arm to escort him out of the gas station. Jackson then swung at Billingslea with, what appeared to be, a closed fist.

d) At the moment Jackson assaulted Billinglsea, Patterson re-entered the store. Billingslea then delivered a chemical aerosol to the eyes of Jackson. The chemical aerosol appeared to have little to no effect on Jackson. Typically, when a chemical aerosol is applied to the face of a subject you will see more of an immediate reaction to the aerosol, Jackson did not appear to be affected by it.

e) Billingslea then took Jackson to the ground by grabbing him from behind the chest and shoulder area. When Billingslea did this, he appeared to have lost his grip on Jackson. Billingslea then attempted to control Jackson by placing his knee on Jackson's back. Billingslea gave Jackson loud and clear verbal commands to put his hands behind his back, which Jackson refused to do. Billinglsea then delivered several hand and knee strikes to Jackson in an attempt to gain compliance. Jackson continued to resist Billinglsea with violence.

f) As this took place, Craft again entered the store, which at the time was an active crime scene, against officer's orders. Billingslea ordered Craft to leave the store. Craft had to be physically removed by Patterson. This was done with a simple escort to the door. As Patterson turned to assist Billingslea, with a still uncooperative and combative Jackson, Craft came back in the store where he can be heard telling Jackson to stop fighting. Craft was eventually standing almost directly behind the officers.

Pg. 26, line 181

Patterson did what any reasonable officer would do in that situation, he assisted another officer with subduing a violent subject.

Pg. 26, line 182

One of the responding officers, Naim Brown ("Brown"), assisted Billingslea with securing Jackson.

Pg. 26, line 183

Brown kept Jackson from moving while on the ground keeping him face down. This is a common technique and practice used by officers after a physical encounter with a violent subject. This allows the officers to control a subject, especially, as in this case, a violent subject. By keeping them flat, on their stomach and in the prone position, it reduces the violent subject's ability to effectively use his legs to kick at officers.

Pg. 26, line 184

Brown used a very reasonable amount of force to control Jackson while handcuffed on the floor. Brown, in my opinion, never used excessive force on

Pg.26, line184 (Cont'd)

Jackson.  Brown maintained control of non-compliant and violent subject by simply turning him back to his stomach.

Pg. 26, line 185

Maintaining physical control of a subject while in custody is a common practice and technique taught to and used by officers.  This technique, in my experience, is not intended to nor is it taught to officers to intimidate subjects.  It is used to subdue and control the subject to prevent any further physical altercations.

**Under the fifth cause of action**:

Pg. 31, line 219

Billingslea only threatened the use of force on Craft when Craft continued to interfere with their duties.  Craft was ordered multiple times to back away.  Craft continuously defied those orders and attempted to inject himself into the situation.

**Under the sixth cause of action:**

Pg. 32, line 227

That Billingslea retaliated against Craft for filming.  Craft was interfering with the officers dealing with Jackson.  Citizens are legally allowed to film the police but not interfere with the duties or shove a camera in their face.  Craft, in my opinion, was interfering and repeatedly disobeyed the lawful commands to back away from them.  Billingslea backed Craft up to a safe distance from them and Craft only backed up after the threat of being maced.  Craft immediately disobeyed that order and followed Billingslea back to the store.

Pg.32, line 228

That Patterson and officer Antoine Hill ("Hill") retaliated against Craft for filming.  Craft was interfering in an active police action at the time and was again, ordered out of the store.  Craft was escorted away from the active crime scene.  The officer's objectively reasonable actions were based on a scene that was not secure.  The situation was still "tense, uncertain and rapidly evolving" (Graham v. Connor).

**Under the eleventh cause of action:**

Pg. 35, line 253

All named responding officers acted on the knowledge they had at the time, that an officer called for assistance with a combative subject, who was still actively resisting officers when they arrived.  They had no knowledge that, or reason to believe that, any amount of excessive force was used.

Conclusion and Opinion:

**Richard Billingslea-**

Billingslea, being, at the time of the incident, a certified police officer in the state of Michigan and a duly sworn police officer for the City of Detroit, who was in a uniform that clearly identified him as such, was performing his sworn duties on 5/31/17.

It is my opinion that the force used by Biilingslea was objectively reasonable given the circumstances he faced.  Billingslea was faced with a violent and out of control subject that refused to obey any lawful police orders.

Craft, after displaying behavior that is not typical of normal, everyday citizens, approached Billingslea at the door of the gas station.  Billingslea, merely attempted to stop Craft from getting any closer.  Billingslea used a common technique of extending his arm out and stopping Craft in order to accomplish that.  This, in my, opinion is what any reasonable officer would have done to stop Craft from getting any closer.

When Jackson forced his way in the store and intentionally made contact with Billingslea, he forced Billingslea to stop him.  Jackson had to be taken to the ground and physically restrained until which point, he calmed down.  Once Jackson calmed down, the force that Billingslea and Patterson used ceased.  At this point Billingslea and Patterson felt they could let Jackson up and de-escalate the situation.  Jackson beagn to yell and act in a completely disorderly way.  This prompted Billingslea to follow Jackson due to Jackson's unpredictable behavior.

Jackson then entered the store by forcing his way by the clerk.  Billingslea tried to grab Jackson by the right arm.  Jackson spun around quickly on Billingslea forcing Billingslea to push Jackson back.  Billingslea then attempted to remove Jackson from the store by applying an escort style technique which is to simply hold the arm of a subject and walk them in the direction you would like them to go.  Jackson then spun around and threw a closed fist punch nearly striking Billingslea.  Billingslea attempted to gain control of Jackson by delivering a chemical aerosol first.  When that appeared to have little to no effect, Billingslea then used physical force to take Jackson to the ground.  This is another common police tactic to get the subject off their feet and to the ground.  Subjects that are fighting or actively resisting are typically easier to control on the ground. This typically limits their ability to flee as well as limits their ability to continue their aggression.  The technique Billingslea applied to take Jackson the ground was to grab Jackson's chest and shoulder area and bring him to the floor.  Once on the floor, Jackson continued to resist Billingslea.  Billingslea applied what are typically known as "distractionary techniques" (hand and knee strikes) to gain control of Jackson's arms.  Distractionsry techniques are typically applied to muscle or nerve areas. Jackson continued to disobey all officers' commands and to comply even when placed in restraints.

**Hakeem Patterson-**

Patterson, being, at the time of the incident, a certified police officer in the state of Michigan and a duly sworn police officer for the City of Detroit, who was in a uniform that clearly identified him as such, was performing his sworn duties on 5/31/17.

When Jackson had to be restrained outside of the gas station, Patterson assisted his partner with controlling an out of control subject (Jackson). He helped Billingslea hold Jackson to the ground until Jackson calmed down enough to where both officers felt it was safe to allow Jackson to get to his feet.

As the altercation with Jackson was taking place in the store, Craft refused to obey the lawful commands of Billingslea to get out of the store. Craft was willingly interfering in an active police action. Patterson very calmly moved craft back towards, and out the front door. Paterson can be heard giving Craft a clear order to "back up". Craft refused to obey these commands and forced Patterson to have to physically move Craft back and away from the door to prevent any further interference from Craft. Patterson did this with a simple straight arm and hand application to the chest area of Craft. This is another common technique used by police officers to get an unwilling subject to move away from a particular area or person. Craft, in violation with officer's lawful commands, came back in the store and once again had to be escorted out by Patterson. Patterson then turned around to again assist Billingslea with the uncooperative and violent Jackson.

It's my opinion that at no time did Patterson use any force that would be considered excessive. He could not have known what type, or how much force Bilingslea was prepared to use and with the situation being so tense, uncertain and rapidly evolving, could not have intervened other than to assist Bilingslea after Jackson became violent and combative. Billingslea and Patterson were dealing with officer's lawful uncooperative subjects. Patterson primarily had to watch and deal with Craft's interference. It is my opinion that Patterson was professional throughout the entire incident and showed an enormous amount of restraint in dealing with two extremely uncooperative subjects.

**Naim Brown-**

Brown, being, at the time of the incident, a certified police officer in the state of Michigan and a duly sworn police officer for the City of Detroit, who was in a uniform that clearly identified him as such, was performing his sworn duties on 5/31/17.

Brown arrived at the Mobile station in response to the call for back up from Billingslea. Upon arrival Brown entered the store and assisted Billingslea with an out of control and combative Jackson. Once in restraints, Brown kept watch over Jackson. Jackson repeatedly tried to move from a prone position to his side, or supine position. Brown, with very little effort or force, kept returning Jackson to the prone position. This was in my opinion the best way to keep Jackson. I agree with Brown when he stated in his deposition that he did so to prevent Jackson from kicking Billingslea or anyone else.

**Randall Craig-**

Craig, being, at the time of the incident, a certified police officer in the state of Michigan and a duly sworn police officer for the City of Detroit, who was in a uniform that clearly identified him as such, was performing his sworn duties on 5/31/17.

In my opinion, at no time did Craig, or any officer on scene, use excessive force. Craig arrived as a supervisor after the fact at the request of Billingslea and Jackson
Graham v. Connor:

OBJECTIVELY REASONABLE USE OF FORCE

A. The United States Supreme Court has held that an officer's use of force will be judged in light of an "objectively reasonable" standard. Reasonableness will be determined by balancing the nature and quality of the intrusions with the countervailing governmental interests. The standard takes into consideration the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

B. The reasonableness of the officer's use of force will be judged on the scene and at the moment the force was used rather than from 20/20 hindsight, and will take into consideration the fact that police officers are often forced to make split-second decisions in circumstances that are tense, uncertain, and rapidly evolving. Graham v Connor, (1989).

# THE MICHIGAN PENAL CODE (EXCERPT)
## Act 328 of 1931

**750.81d Assaulting, battering, resisting, obstructing, opposing person performing duty; felony; penalty; other violations; consecutive terms; definitions.**

Sec. 81d.

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

(2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

(4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing the death of that person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

(5) This section does not prohibit an individual from being charged with, convicted of, or punished for any other violation of law that is committed by that individual while violating this section.

(6) A term of imprisonment imposed for a violation of this section may run consecutively to any term of imprisonment imposed for another violation arising from the same transaction.

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b) "Person" means any of the following:

(i) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

(ii) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(iii) A conservation officer of the department of natural resources or the department of environmental quality.

(iv) A conservation officer of the United States department of the interior.

(Cont'd)

(v) A sheriff or deputy sheriff.

(vi) A constable.

(vii) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(viii) A firefighter.

(ix) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.

(x) An individual engaged in a search and rescue operation as that term is defined in section 50c.

(c) "Serious impairment of a body function" means that term as defined in section 58c of the Michigan vehicle code, 1949 PA 300, MCL 257.5

Referenced legal sources:

Graham v. Connor 490 U.S. 386 (1989)

Michigan Penal Code (Excerpt)
      Act 328 of 1931
        750.81d

*Timothy K. McGuckin*
Timothy k. McGuckin      Date: 8/16/2019

# EXHIBIT 2

<u>**Expert Witness Compensation Schedule**</u>
**Timothy K. McGuckin**

<u>**Research, Review and Consultation**</u>
Research, Review and Consultation services to be paid at $200.00 per hour.

<u>**Depositions and/or Trials**</u>
Services during depositions and/or trials, either as a witness or consultant, are paid at $250.00 per hour with a 3-hour minimum per day.

<u>**Travel**</u>
Travel time is $100.00 per hour, from portal to portal, with a one-hour minimum travel charge.

<u>**Retainer**</u>
There will be a $2000.00 (first 10 hrs) non-refundable initial retainer.

<u>**Cancellation Fees**</u>
A one-hour minimum fee will be charges when meeting, depositions and/or trials are cancelled or rescheduled within seven calendar days of the event.