# EXHIBIT 6



**User Name:** Maddy Sinkovich
**Date and Time:** Monday, May 3, 2021 4:25:00 PM EDT
**Job Number:** 142948724

## Document (1)

1. *HD Brous & Co. v. Mrzyglocki, 2004 U.S. Dist. LEXIS 3095*

   **Client/Matter:** Craft/Jackson
   **Search Terms:** HD Brous & Co. v. Mrzyglocki, 2004 U.S. Dist. LEXIS 3095
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

 Caution
As of: May 3, 2021 8:25 PM Z

# *HD Brous & Co. v. Mrzyglocki*

United States District Court for the Southern District of New York

February 25, 2004, Decided ; February 26, 2004, Filed

03 Civ. 8385 (CSH)

**Reporter**
2004 U.S. Dist. LEXIS 3095 *; 2004 WL 376555

HD Brous & Co., Inc., Petitioner, -against- Roman M. Mrzyglocki, Respondent.

**Subsequent History:** Sanctions disallowed by *HD Brous & Co. v. Mrzyglocki, 2004 U.S. Dist. LEXIS 11245 (S.D.N.Y., June 15, 2004)*

**Disposition: [*1]** Petition to stay or enjoin the arbitration denied. Petition dismissed, with prejudice.

## Core Terms

arbitration, parties, Reply, terms, arbitration clause, numbered paragraph, arbitration agreement, benefits, business relationship, oral argument, disclaim, financial services, courts, cases, agreement to arbitrate, substantive law, margin account, diversity, documents, federal court, papers, state court, misleading, enjoin, statute of limitations defense, terms of the agreement, federal law, broad-form, provisions, timeliness

## Case Summary

### Procedural Posture
Petitioner sought to enjoin an arbitration pending before the New York Stock Exchange.

### Overview

The arbitration sought by respondent was to proceed according to a schedule set by the arbitrators. The terms of the margin account agreement were enforceable over petitioner. The agreement contained a broad-form arbitration clause in which it was agreed that all disputes between petitioner and respondent were to be resolved in arbitration and the court was bound to respect the agreement. Even if the agreement were, as counsel for petitioner claimed, a contract between respondent and another entity, petitioner was a named beneficiary of the agreement. Petitioner also sought and accepted significant benefits from the agreement. Having knowingly accepted benefits from the agreement, petitioner was estopped from disclaiming the agreement to arbitrate. Since petitioner was bound by the agreement, it was bound to arbitrate "all past, present, or future controversies" between itself and respondent, including its proposed statute of limitations defenses. The court also apprised petitioner's counsel of the areas of its concerns and provided counsel a reasonable opportunity to respond as to whether counsel should have been sanctioned under *Fed. R. Civ. P. 11*.

### Outcome
The petition to stay or enjoin the arbitration pending before the New York Stock Exchange was denied and the petition was dismissed, with prejudice. The court awarded the opposing party attorney's fees. In addition to denying the petition, the court directed an order to show cause to petitioner's counsel as to why sanctions should not have been imposed.

2004 U.S. Dist. LEXIS 3095, *1

# LexisNexis® Headnotes

Administrative Law > Agency Adjudication > Alternative Dispute Resolution

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

*HN1*[🔽] **Agency Adjudication, Alternative Dispute Resolution**

The obligation to arbitrate is created by contract. It follows that a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. It does not follow, however, that under the Federal Arbitration Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. To the contrary, it is well-established that non-signatories to an arbitration agreement may nevertheless be bound to arbitrate according to ordinary principles of contract and agency. In Thomson-CSF, S.A. v. American Arbitration Ass'n the United States Court of Appeals for the Second Circuit specified five principles in particular: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions &

Provisions > Arbitration Clauses

Contracts Law > ... > Beneficiaries > Types of Third Party Beneficiaries > Intended Beneficiaries

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

Contracts Law > ... > Beneficiaries > Types of Third Party Beneficiaries > General Overview

*HN2*[🔽] **Contract Conditions & Provisions, Arbitration Clauses**

A party is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement

*HN3*[🔽] **Contract Conditions & Provisions, Arbitration Clauses**

If a contract containing an arbitration clause is entered into between parties with at least the partial purpose of benefitting a third party and that party accepts those benefits, the third party may not disclaim its duty to arbitrate under the agreement.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

*HN4*[🔽] **Contract Conditions & Provisions, Arbitration Clauses**

Under well-settled United States Supreme Court and Second Circuit case law, the federal courts are generally obliged to refrain from interfering with the authority assigned to arbitrators by parties to arbitration agreements.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Labor & Employment Law > Collective Bargaining & Labor Relations > Labor Arbitration > Enforcement

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Judicial Review

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

_HN5_[⬇] **Contract Conditions & Provisions, Arbitration Clauses**

When the parties to a dispute have entered into an arbitration agreement, a court's only functions to ensure that there is an agreement to arbitrate, that the agreement is enforceable, and that the issues presented to the arbitrators are within the scope of the arbitration agreement.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Judicial Review

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

_HN6_[⬇] **Arbitration, Arbitrability**

"Questions of arbitrability" are issues for judicial determination unless the parties clearly and unmistakably provide otherwise. Parties may, then, "provide" that even threshold issues of arbitrability are to be decided by arbitrators. In the Second Circuit, issues relating to timeliness are treated as issues of arbitrability.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Governments > Courts > Judicial Precedent

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

_HN7_[⬇] **Arbitration, Arbitrability**

United States Supreme Court precedent provides that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

_HN8_[⬇] **Contract Conditions & Provisions, Arbitration Clauses**

Under the law of the Second Circuit, the scope of a broad-form arbitration agreement includes issues relating to timeliness.

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity

of ADR Methods

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview

Governments > Legislation > Statute of Limitations > General Overview

**HN9**[↓] **Alternative Dispute Resolution, Validity of ADR Methods**

*N.Y. C.P.L.R. § 7502(b)* provides that a party to an arbitration may assert a statute of limitations defense before "the court."

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > General Overview

**HN10**[↓] **Federal & State Interrelationships, Erie Doctrine**

Federal courts sitting in diversity apply state substantive law and federal procedural law.

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > General Overview

**HN11**[↓] **Federal & State Interrelationships, Erie Doctrine**

Guaranty Trust Co. v. York established the long-lived outcome-determinative test, which asks of a particular law: Does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court? In Hanna v. Plumer, the United States Supreme Court refined the Guaranty Trust rule, pointing out that the outcome-determinative test was just one way to assess the twin

aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws. In Hanna v. Plumer, the Supreme Court instructed federal courts to ask whether application of the State's rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Mandatory ADR

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

**HN12**[↓] **Alternative Dispute Resolution, Mandatory ADR**

Forum shopping concerns are particularly muted in cases involving *N.Y. C.P.L.R. § 7502* because parties have already, by definition, done their shopping. As a general rule, parties can only be compelled to submit to arbitration if they have already agreed to arbitrate controversies between them.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Governments > Legislation > Statute of Limitations > General Overview

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

**HN13**[↓] **Arbitration, Arbitrability**

Where parties have agreed to arbitrate, questions of arbitrability, including statute of limitations defenses, are within the purview of the courts unless the parties have already agreed to submit them to arbitration. This is true in both the federal system and in the New York courts.

2004 U.S. Dist. LEXIS 3095, *1

Where parties have agreed to send questions of arbitrability to arbitration, however, New York courts and federal courts agree that the bargain should be respected.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

## HN14[⬇] Contract Conditions & Provisions, Arbitration Clauses

Under federal law and New York law, courts are required to respect the bargains of parties to arbitration agreements.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Judicial Review

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

## HN15[⬇] Contract Conditions & Provisions, Arbitration Clauses

*N.Y. C.P.L.R. § 7502(b)* does not give New York state courts exclusive right to determine the merit of statute of limitations defenses in arbitration cases. It simply provides them with the power to do so as a function of the more general rights of parties to have their disputes settled by a court of law.

Civil Procedure > Attorneys > General Overview

Civil Procedure > Sanctions > General Overview

Civil Procedure > Sanctions > Baseless Filings > General Overview

## HN16[⬇] Civil Procedure, Attorneys

*Fed. R. Civ. P. 11(b)* provides in part, that by presenting to the court a pleading, written motion, or other paper, an attorney is certifying that the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. If the court determines, after notice and a reasonable opportunity to respond, that *Rule 11(b)* has been violated, the court may sanction an attorney. *Fed. R. Civ. P. 11(c)*.

Civil Procedure > Sanctions > Baseless Filings > General Overview

Civil Procedure > Sanctions > General Overview

## HN17[⬇] Sanctions, Baseless Filings

Sanctions may be sought by a party on motion, *Fed. R. Civ. P. 11(c)(1)(A)*, or the court on its own initiative may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm or party to show cause why it has not violated subdivision (b) with respect thereto.

Civil Procedure > Sanctions > General Overview

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN18**[⬇]  **Civil Procedure, Sanctions**

Due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions.

> Civil Procedure > Sanctions > General Overview

> Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN19**[⬇]  **Civil Procedure, Sanctions**

The district court possesses the inherent power to levy sanctions. Neither the adoption of *28 U.S.C.S. § 1927*, a federal statute authorizing sanctions, nor the Federal Rules of Civil Procedure displace the inherent power of the court to sanction. The same due process concerns apply, whatever the source of the district court's sanctioning authority.

> Civil Procedure > Sanctions > Baseless Filings > General Overview

> Civil Procedure > Sanctions > General Overview

**HN20**[⬇]  **Sanctions, Baseless Filings**

Not all oral statements to a court are sanctionable under *Fed. R. Civ. P. 11*.

> Civil Procedure > Sanctions > Baseless Filings > General Overview

> Civil Procedure > Sanctions > General Overview

**HN21**[⬇]  **Sanctions, Baseless Filings**

Failures to cite and address contrary authority are subject to *Fed. R. Civ. P. 11* sanction.

> Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

> Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

> Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

> Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement

**HN22**[⬇]  **Contract Conditions & Provisions, Arbitration Clauses**

The doctrine of estoppel in the context of arbitration agreements is designed to prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful. The key holding in DuPont is that a non-signatory should not be permitted to embrace a contract for some purposes and then disclaim that same contract's unfavorable terms.

**Counsel:** For Roman M. Mrzyglocki, Respondent: Peter S. Pearlman, LEAD ATTORNEY, Cohn, Lifland, Pearlman, Herrmann & Knopf, LLP, Saddle Brook, NJ.

For HD Brous & Co., Inc., Petitioner: Barry R. Temkin, LEAD ATTORNEY, Jacobowitz Garfinkel & Lesman, New York, NY.

**Judges:** CHARLES S. HAIGHT, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** CHARLES S. HAIGHT, JR.

# Opinion

MEMORANDUM OPINION, ORDER, AND ORDER TO SHOW CAUSE

HAIGHT, Senior District Judge:

This is a petition to enjoin an arbitration currently pending before the New York Stock Exchange

("NYSE"). For reasons set forth below the petition is denied. The arbitration sought by Respondent will proceed according to a schedule set by the arbitrators. Denial of the petition intimates no view of the Court on Petitioner's proposed statute of limitations defense, which may be presented to the arbitrators at Petitioner's discretion. In addition to denying the petition, the Court will direct an order to show cause to Petitioner's counsel under *Federal Rule of Civil Procedure 11(c)(1)(B)* **[*2]** .

I. BACKGROUND

According to the memoranda and supporting papers filed with this Court by the parties in the above captioned action, Respondent, Roman Mrzyglocki, was a client of HD Brous & Co., Inc., Petitioner, from late 1996 until March of 1998. HD Brous is a financial services organization and a New York Corporation. Mrzyglocki is a resident of New Jersey. During the period of their business relationship, Respondent alleges that he lost over $ 180,000 as a result of transactions and investments made by and through Petitioner that were at odds both with responsible business practices and with Respondent's expectations and instructions.

As part of the business relationship entered into by Petitioner and Respondent, Mrzyglocki signed a Margin Account Agreement (the "Agreement"), which included an arbitration agreement. A copy of the Agreement has been provided to the Court as Exhibit C, attached to the sworn affidavit of Robert Brous, Chief Executive Officer of HD Brous. In his affidavit Brous testifies that the Agreement was completed and signed during the course of opening Respondent's account with HD Brous. Brous Affidavit at 2. Brous further relies upon Exhibit C, asserting **[*3]** that it, by a choice of law provision, binds the parties to apply Maryland law to their disputes. *Id.* at 3. These assertions are repeated in the petition filed by HD Brous in the State court.

On June 26, 2003 Respondent filed a Statement of Claim, in accordance with the arbitration rules of the New York Stock Exchange ("NYSE"), demanding arbitration of claims against Petitioner arising from HD Brous's alleged mishandling of his account. In his Claim, Respondent alleges that Petitioner and its agent, Timothy Mann, breached their fiduciary duties to Respondent by engaging in a series of high-risk transactions that resulted in the above-mentioned losses. Respondent further alleges violations of National Association of Securities Dealers ("NASD") and NYSE rules and regulations, citing, *inter alia,* alleged failures to inform Respondent about critical investment

transactions and failures to act on Respondent's directions.

On July 18, 2003 the NYSE served Petitioner with Respondent's Statement of Claim. On October 3, 2003 HD Brous filed a petition before the Supreme Court of New York, New York County, seeking to enjoin the arbitration pursuant to *Section 7502(b) of the New York Civil Practice Law and Rules* **[*4]** , asserting that Respondent's claims were time-barred. On that date Justice Emily Jane Goodman issued an Order to Show Cause wherein Respondent was directed to appear in New York Supreme Court on October 30, 2003. Justice Goodman declined to issue a Temporary Restraining Order as part of the Order to Show Cause. [1]

Respondent filed a Notice of Removal in this Court on October 23, 2003. The matter was subsequently referred to me by normal administrative procedures. With the Notice of Removal, Respondent filed his "Memorandum of Law in Opposition to Petitioner's Application to Stay Arbitration" (the "Response"). On November 20, 2003 Petitioner filed a timely Reply (the "Reply"). The events recounted above **[*5]** have put HD Brous's fully-briefed petition before this Court.

In the course of reviewing papers submitted by the parties the Court became concerned with a series of shifts in Petitioner's positions on critical issues of law and fact. Foremost of these was Petitioner's reversal as to whether or not the arbitration agreement, presented to the Court by Robert Brous himself, formed part of a binding contract between the parties. To resolve this question, amongst others, the Court scheduled an oral argument on the petition by an Order dated January 13, 2004 (the "January 13, 2004 Order").

That argument was commenced, as scheduled, on January 21, 2004. At the end of the hearing the Court invited the parties to provide the Court with written submissions detailing any additional cases or other sources of law the Court should consider. Petitioner obliged in the form of a letter dated January 28, 2004. Respondent, in conformance with the directions of the Court, responded with his own letter on February 2, 2004. The Court has given full consideration to the arguments of the parties and the relevant law. For

_____

[1] A copy of Justice Goodman's Order to Show Cause provided to the Court evinces her intention to not issue a Temporary Restraining Order. A paragraph providing for a temporary restraint included in HD Brous's proposed Order was manually stricken on the Order signed by Justice Goodman.

reasons set forth below it declines to issue the requested order enjoining arbitration. [*6] This Court makes no comment on the merits of either Petitioner's statute of limitations defense or Respondent's claims. In their present posture, these issues are rightfully the concern of the arbitrators, not this Court.

## II. DISCUSSION

The weight of Petitioner's argument for a court imposed stay on the arbitration pending before the NYSE is borne by the assertion that Respondent's claims are time-barred. Petitioner points out that March 1998 marks the end of its business relationship with Respondent. Therefore, Petitioner argues, Respondent's claim for arbitration, filed in June of 2003, relies on events more than five years in the past. Petitioner further claims, in its original petition, that this five-year period exceeds the statutes of limitation on Respondent's claims under both federal law and Maryland law. [2]

[*7] Mrzyglocki responds, after having removed the petition to this Court, with a series of conditional arguments, beginning with an assertion that HD Brous can neither file a petition under _N.Y. CPLR §§ 7502 and 7503_ nor rely on New York case law because New York law does not govern the dispute. Respondent contends that New Jersey law should apply in this case and argues that his claim for arbitration is timely under the six-year statute of limitations that governs his claims under New Jersey common law. Next, Respondent argues that, "even if New York law did apply, the issue of whether Mrzyglocki's claims are time-barred is a question for the arbitrators, rather than the courts, to decide" under the broad-form arbitration agreement signed by the parties. Response at 5. Finally, Respondent argues that, even if New York law applies and all issues relating to his claims were not destined for the arbitrators by way of the arbitration agreement, HD Brous was untimely in making its petition under _N.Y. CPLR §§ 7502 and 7503_.

In reply, Petitioner again contends that it may move for an injunction in this Court pursuant to _N.Y. CPLR §_

_7502_ [*8] . In support of this contention counsel point out that the only basis for this Court to assert jurisdiction over the subject-matter in this case is pursuant to _28 U.S.C. § 1332_. Thus, counsel conclude, the Court is bound to receive and consider the petition pursuant to _N.Y. CPLR § 7502_ because, in diversity cases, "state substantive law must be applied." Reply at 1. In their Reply counsel for Petitioner also, for the first time and after having relied upon the Agreement in earlier submissions to the State court, claim that HD Brous is not a signatory to the Agreement and is, therefore, not bound by either the choice of law provisions in numbered paragraph 17, Reply at 11, of the Agreement or the broad-form arbitration agreement in numbered paragraph 19 of the Agreement, Reply at 7-8.

The Court finds that the terms of the Margin Account Agreement are enforceable over Petitioner. Numbered paragraph 19 of the Agreement contains a broad-form arbitration clause in which "it is agreed" that all disputes between Petitioner and Respondent will be resolved in arbitration. This Court is bound to respect this agreement. It will, therefore, decline [*9] to grant the petition. Without commenting on the merits of Respondent's claims or Petitioner's proposed defenses, the Court will leave the arbitrators to do their duties.

## A. Petitioner is Bound by the Terms of the Margin Agreement

Petitioner, through the affidavit of Robert Brous and in its original petition, presents the Agreement as a document forming part of its business relationship with Respondent. In its petition, HD Brous relies upon numbered paragraph 17 of the Agreement to argue that Maryland and federal law should apply to Respondent's claims. In a radical change of position, counsel for Petitioner assert in their Reply that Petitioner is not bound by the terms of the Agreement because it is not a signatory. Counsel repeated this claim at the oral argument and do so again in the letter to their January 28 letter. Counsel's attempts to distance their client from the Agreement are misleading and fruitless. The Agreement serves as evidence that Petitioner agreed, along with Respondent, to arbitrate all controversies between them. Petitioner has also claimed benefits from the Agreement and is, on this basis, estopped from disclaiming the arbitration clause.

[*10] 1. The Margin Agreement Documents Terms Affecting Respondent's Business Relationship with Petitioner

---

[2] Maryland law is of interest because it is named, with federal law, in a choice of law provision, found in paragraph 17 of the Agreement. HD Brous's reference to Maryland law as the controlling substantive law in its petition is in direct contradiction to two assertions that counsel for HD Brous make in the Reply: 1) that New York substantive law should apply and 2) that HD Brous is not bound by the terms of the Agreement.

Petitioner is not a signatory to the Agreement. In their Reply, counsel for Petitioner represent that the Agreement is signed "by a Maryland clearing firm, Alex, Brown & Sons, Inc." Reply at 7. From these facts, counsel would have this Court conclude that the Agreement is a contract between Alex, Brown and Respondent in which Petitioner does not participate, from which Petitioner does not benefit, and by which Petitioner is not bound. Counsel are wrong on all scores.

To start, counsel's claim that Alex, Brown signed the Agreement is not accurate. The agreement is, in fact, only signed by Respondent. Alex, Brown & Sons ("Alex, Brown") is named in the agreement and its corporate name and address appear at the top of the document. There is, however, no signature line for Alex, Brown, its representative, or any parties other than prospective clients. Alex, Brown also does not appear in a first-person speaking role at any point in the Agreement.

The document does not purport to speak for anyone other than Respondent. There are three parties contemplated in the Agreement: the signatory [*11] client (Respondent), Alex, Brown, and the client's "Financial Services Organization." At the oral argument, counsel for Petitioner admitted that HD Brous is the Financial Services Organization named in the Agreement. Pursuant to paragraph 1 of the Agreement, all uses of the first-person in the Agreement refer to Respondent. Most of the substantive paragraphs in the Agreement find Respondent acting or reporting in his own voice. By contrast, Alex, Brown and HD Brous are silent in the Agreement. At no point in the document do Alex, Brown or HD Brous speak or take action in the first-person.

In the first unnumbered paragraphs of the document, Respondent acknowledges that he has been informed by HD Brous that Alex, Brown will provide certain services to HD Brous relating to Respondent's account. Respondent also agrees that he has been informed about and accepts certain features of and limitations on his business relationship with Alex, Brown and HD Brous. These features and limitations are documented in the remaining eighteen numbered paragraphs, all of which have Respondent acknowledging and agreeing to features and limitations on his margin accounts with HD Brous that are, as per HD [*12] Brous's arrangements with Alex, Brown, serviced by Alex, Brown.

According to the affidavit of Robert Brous, Respondent signed the Agreement "in the course of opening his

account." Brous Affidavit at 2. It became clear at the oral argument that, consistent with the normal business practices of HD Brous, Petitioner presented the Agreement to Respondent along with a "new account form" and "account transfer documents." The "new account form," Exhibit B attached to the affidavit of Robert Brous, consists of one page and provides no details as to the features and limitations of the business relationship between Petitioner and Respondent. The "account transfer documents" perform the job suggested by their title, but provide no details whatever as to the business relationship between Petitioner and Respondent. The Agreement, presented to Respondent by Petitioner, is the only document of substance offered by either party relating to the business relationship formed between the parties when Respondent opened his account with Petitioner.

The Agreement is not, as counsel for Petitioner want the Court to believe, an agreement solely between and affecting Respondent and Alex, Brown. The Agreement [*13] makes reference to Petitioner no fewer than twenty times. That is so, notwithstanding the fact that HD Brous's name does not appear in the Agreement. The Agreement's references are to the "Financial Services Organization," and to the "correspondent." It is not disputed that HD Brous is the subject of these references. As examples, in numbered paragraph 2 Respondent agrees to delegate authority to Petitioner; in numbered paragraphs 3, 11, and 13 Respondent describes how Petitioner will be involved in the financing and handling of his accounts; in numbered paragraph 4 Respondent agrees to make certain disclosures to Petitioner; in numbered paragraph 14 Respondent sets forth the procedure by which he can object to Petitioner's handling of his funds and accounts; in numbered paragraph 19 Respondent recites an agreement amongst the parties that any disputes between them will be sent to arbitration pursuant to the *Federal Arbitration Act*.

These facts and the form of the Agreement itself make the absence of Petitioner's signature on the document irrelevant. In its form and content the Agreement demonstrates that Respondent has been informed of and agrees to certain features and requirements [*14] of his account with HD Brous. It documents Respondent's *acceptance* of terms on an offer of services extended by Petitioner and Alex, Brown. According to the Agreement, these terms and information relating to the respective duties of the parties were provided to Respondent by Petitioner. The Agreement itself was, according to Robert Brous,

provided to Respondent by Petitioner. The terms documented in the Agreement are Petitioner's terms of service. The Agreement does no more or less than document that Respondent, at the time he opened his account with Petitioner, understood and accepted these terms. Pursuant to terms documented in the Agreement, Petitioner began to perform services for Respondent and to claim benefits from their business relationship. Petitioner is, therefore, bound to abide by the terms of the Agreement.

The grammatical construction of the Agreement also provides strong evidence that it documents an agreement between the parties as opposed to creating one. Most paragraphs in the Agreement are animated by a first-person present tense declarative such as "I acknowledge," "I agree," and "I authorize." These paragraphs present a picture of duties, conditions, and **[*15]** limitations being proposed to Respondent with Respondent acting affirmatively to accept them. Consistent with the use of these first-person declarations, the duties, acknowledgments, and agreements found in these paragraphs are uniquely Respondent's.

The contrasting choice of the phrase "It is agreed" at the beginning of paragraph 19 is, in this context, quite revealing. The use of the third-person singular present tense indicative in combination with the past participle clearly communicate the fact that the speaker, here Respondent, is reporting rather than acting. Specifically, he is reciting, from an objective point of view, an agreement between Alex, Brown, HD Brous, and Respondent, "that all past, present, or future controversies between myself, any persons having an interest in my account, Alex, Brown, [HD Brous], or any of the employees or affiliates of either … shall be submitted to arbitration pursuant to the Federal Arbitration Act."

If Petitioner did not, as its counsel now claims, intend or want to be bound by contract terms that it presented to Respondent for his acceptance, then it could have taken action to avoid any commitment. It could have disclaimed the contract **[*16]** terms set forth in Respondent's acceptance. Having done so, Petitioner could have altered the Agreement or negotiated a separate and superceding agreement. At the very least, a representative of HD Brous, one of whom was present when Respondent signed, could have manifested an unwillingness to be bound by the arbitration clause in numbered paragraph 19 before accepting the signed Agreement and commencing a business relationship

with Respondent. Petitioner did none of these things.

The title "Agreement" may be misleading to Petitioner, but the Court suspects not. Petitioner presented to Respondent the terms set forth in the Agreement. Petitioner was present when Respondent accepted these terms. The terms accepted by Respondent document details pertaining to the business relationship being formed between Petitioner and Respondent. Respondent specifically names Petitioner as a beneficiary of his acceptance of terms. Agreement at para. 2 ("I intend that my Financial Service Organization be a beneficiary of this Agreement"). Petitioner, through its officer Robert Brous, is also the first party to use the Agreement as evidence of contract terms between itself and Respondent. All of this **[*17]** suggests that Petitioner knows that the Agreement accurately reports the terms of its business relationship with Respondent. Petitioner certainly relied upon this being the case in its petition.

Petitioner made an offer of financial services to Respondent. Respondent accepted. Petitioner presented an Agreement to Respondent. According to Respondent's reports in the Agreement, Petitioner provided information and explanation pertinent to the contract terms described in the Agreement. Respondent signed the Agreement. Petitioner accepted it without alteration and without disclaiming Respondent's report, at paragraph 19 of the Agreement, that he, Petitioner, and Alex, Brown had agreed to arbitrate "all past, present, or future controversies" between them. Petitioner has not produced any other document of substance that purports to set additional or alternative terms for its contract relationship with Respondent. After the Agreement was signed, Petitioner accepted funds from Respondent and acted as his "Financial Services Organization." On this basis the Court concludes that the terms documented in the Agreement are binding upon Petitioner as part of its contract relationship with Respondent.

 **[*18]** 2. Petitioner is Estopped from Disclaiming the Agreement to Arbitrate

Even if the Agreement were, as counsel for Petitioner now claim, a contract between Respondent and Alex, Brown only, HD Brous is a named beneficiary of the Agreement. Petitioner has also sought and accepted significant benefits from the Agreement. Having knowingly accepted benefits from the Agreement, Petitioner is estopped from disclaiming the agreement to arbitrate found in paragraph 19 of the Agreement.

*HN1*[↑] ] The obligation to arbitrate is created by contract. It follows that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)*. "'It does not follow, however, that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.'" *Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)* (quoting *Fisser v. International Bank, 282 F.2d 231, 233 (2nd Cir., 1960)*. To the contrary, it is well-established **[\*19]** that "non-signatories to an arbitration agreement may nevertheless be bound [to arbitrate] according to ordinary principles of contract and agency." *McAllister Bros. v. A & S Transportation, 621 F.2d 519, 524 (2nd Cir., 1980)* (citations omitted); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d at 1060, 1064 (2nd Cir. 1993)*. In *Thomson-CSF, S.A. v. American Arbitration Ass'n* the Second Circuit specified five principles in particular: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.". *64 F.3d 773, 776 (2d Cir. 1995)*. See also *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2nd Cir., 1999)*. Estoppel is the principle most relevant on the present facts.

*HN2*[↑] ] "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir., 1999)* (citing *Thomson-CSF, 64 F.3d at 778-779*); *Deloitte Noraudit A/S, 9 F.3d at 1064*; **[\*20]** *Smith/Enron Cogeneration, 198 F.3d at 98*. If Petitioner here was an intended beneficiary of the Agreement, knew that it was an intended beneficiary of the Agreement, and knowingly accepted benefits from the Agreement then it cannot selectively repudiate the obligation to arbitrate set forth in the Agreement. *See Thomson-CSF, 64 F.3d at 778, 779*; *Deloitte Noraudit, 9 F.3d at 1064*.

In the January 21, 2004 hearing counsel for Plaintiffs claimed that HD Brous is not a third-party beneficiary to the Agreement and did not, in fact, receive any benefits from the Agreement. Both assertions are wrong.

At the January 21, 2004 hearing and again in the letter to the Court counsel for Plaintiff's relied, misleadingly, on *DuPont De Nemours & Co. v. Rhone Poulenc, 269 F.3d 187 (3rd Cir., 2001)* to argue that Petitioner is not a

beneficiary of the Agreement. Critical to the Third Circuit's analysis in that case was the fact that DuPont was not a named beneficiary to the contract. *See DuPont, 269 F.3d at 196*. That is not the case here.

Petitioner is, in fact, a knowing and intended beneficiary of the Agreement. In **[\*21]** numbered paragraph 2 of the Agreement it is stated that "I intend that my Financial Services Organization be a beneficiary of this Agreement." As counsel for Petitioner admitted at oral argument, Petitioner is the "Financial Services Organization" contemplated here and throughout the Agreement. Given that Petitioner gave the Agreement to Respondent, as it has to many other clients, Petitioner knew, or should have known, that it was an intended beneficiary. At the least, counsel for Petitioner could not properly claim, without caveat or limitation, that it was not.

Counsel's claim that Petitioner has not received and accepted actual benefits from the Agreement is also inaccurate. According to the affidavit of Robert Brous, Respondent completed the Agreement in the course of opening his account with Petitioner. Brous Affidavit at 2. In addition to being a foundational document for their business relationship, the Agreement sets forth, in general and specific terms, how the relationship will function. The other documents provided by Petitioner are, by comparison to the Agreement, mere bureaucratic necessities. The Agreement is the document that does the most to establish and define the **[\*22]** working relationship Petitioner and Respondent entered into. All of the benefits that accrued to Petitioner from this relationship over the next twenty-seven months flow from the Agreement and the authority granted by Respondent to Petitioners in the Agreement.

Though Petitioner is not a signatory to the Agreement, the fact that the Agreement intentionally benefits Petitioner by establishing the terms of its business relationship with Respondent is sufficient to bind Petitioner to the terms of the Agreement. *See MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2nd Cir., 2001)* (interpreting *American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 (2d Cir., 1999))*. *HN3*[↑] ] If a contract containing an arbitration clause is entered into between parties with at least the partial purpose of benefitting a third party and that party accepts those benefits, the third party may not disclaim its duty to arbitrate under the agreement. *Tencara, 170 F.3d at 351*. The Agreement clearly intends to benefit Petitioner by

establishing its business relationship with Respondent. Knowing, as it did, about the Agreement and having claimed the **[\*23]** benefits of the relationship described in the Agreement, Petitioner is estopped from disclaiming its duty to submit to arbitration under the Agreement.

In addition to these general benefits Petitioner has also relied upon the Agreement to claim benefits in the present litigation. In paragraph 10 of his Affidavit, Robert Brous, citing the Agreement, asserts that Maryland and federal statutes of limitation govern Respondent's arbitration claims. On page 3 of the Answer and Motion for More Definite Statement, Petitioner, referring to the Agreement, repeats this assertion. On page 4 of its petition to the Supreme Court of the State of New York, Petitioner makes the same assertion, again relying upon the Agreement.

The Second Circuit confronted a similar situation in _World Omni Fin. Corp. v. ACE Capital Re Inc., 64 Fed. Appx. 809, 2003 U.S. App. LEXIS 8441 (2nd Cir., May 2, 2003)._ There the plaintiff made damage claims that were derived from a contract to which it is not a signatory. When a defendant attempted to invoke the arbitration clause of that same contract, the plaintiff disclaimed the contract. In their Summary Order, the panel found that the plaintiff was estopped **[\*24]** from making the argument that it was not bound by the arbitration clause since, amongst other reasons, it had attempted to derive direct benefits from the contract containing the clause in the very same litigation. Counsel's maneuvering on behalf of the Petitioner in the case at bar is directly analogous. Petitioner laid claim to the Agreement when it sought to limit Respondent's choice of substantive law. Having relied upon the Agreement for substantive benefit in this litigation, Petitioner is estopped from disclaiming its obligation to arbitrate under the Agreement. _See Tencara 170 F.3d at 353; Thomson-CSF 64 F.3d at 778, 779._

In the January 28, 2004 letter to the Court, counsel for Petitioner suggest that, while Petitioner may be bound by some terms of the Agreement (presumably the choice of law clause), it is not necessarily bound by the arbitration clause in paragraph 19 because "the court may separately consider and parse various provisions of the contract." January 28 Letter at 2. Completing the inference, counsel cite _Zimring v. Coinmach Corp., 2000 U.S. Dist. LEXIS 18221, No. 00 Civ. 8111, 2000 WL 1855115 (S.D.N.Y., Dec. 19, 2000)_, where, counsel reports, **[\*25]** a company representative who "signed [a] portion of [the] agreement but did not sign [the]

arbitration clause is not bound to arbitrate."

This argument and the reliance on _Zimring_ are bewildering, if not frivolous. The facts presented to Judge McKenna in _Zimring_ were entirely different from those here. In that case the plaintiff took affirmative steps to specifically limit his participation in the contract to two particular provisions. _Zimring 2000 U.S. Dist. LEXIS 18221, [WL] at \*1._ Judge McKenna rightly concluded that, in those circumstances, the plaintiff intended _not_ to be bound by other provisions that he did not sign. In the case at bar, while Petitioner did not sign the Agreement, it is specifically named as a participant in and a beneficiary of the arbitration agreement in numbered paragraph 19.

The Court is convinced that the form of the Agreement, the content of the Agreement, and the circumstances under which it was signed prove that Petitioner is a party to the contract described in the Agreement, including the agreement to arbitrate. Even if the Agreement is read as a two-party contract to which Petitioner is not a signatory, Petitioner is an intended beneficiary of the Agreement. **[\*26]** Petitioner knew that it was a beneficiary; and Petitioner accepted benefits from the Agreement. Furthermore, Petitioner has used the Agreement as a sword against Respondent in the course of this litigation. Having knowingly accepted and sought benefits under the Agreement, Petitioner may not disclaim its duties under numbered paragraph 19, where it is identified as a party to the agreement to arbitrate.

## B. Petitioner's Statute of Limitations Defenses are for Arbitrators to Decide

Having held that Petitioner is bound by the terms of the Agreement, the Court will now consider the impact of the arbitration clause on the present petition. To this end, it is appropriate and necessary to consider the text of the arbitration clause. In its entirety, it reads:

> It is agreed that all past, present, or future controversies between myself, any persons having an interest in my account, Alex, Brown, my Financial Service Organization, or any of the employees or affiliates of either, concerning any transaction or the construction, performance, or breach of this or any other agreement pertaining to securities and other property, whether entered into prior [sic], on or subsequent **[\*27]** to the date hereof, including but not limited to claims of fraud in the inducement, shall be submitted to arbitration

2004 U.S. Dist. LEXIS 3095, *27

pursuant to the Federal Arbitration Act. Any arbitration under this Agreement shall be conducted before the National Association of Securities Dealers, Inc. ("NASD") or any other securities industry self-regulatory organization of which Alex, Brown or your correspondent is a member, in accordance with the rules then obtaining of such organization. The award of the arbitrator(s), or a majority of them, shall be final and judgment upon such award may be entered in any court having jurisdiction. No person shall bring a putative or certified class action to arbitration, nor [sic] seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

HN4[↑] Under well-settled United [*28] States Supreme Court and Second Circuit case law, the federal courts are generally obliged to refrain from interfering with the authority assigned to arbitrators by parties to arbitration agreements. See generally Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 154 L. Ed. 2d 491, 123 S. Ct. 588 (2002); EEOC v. Waffle House, 534 U.S. 279, 151 L. Ed. 2d 755, 122 S. Ct. 754 (2002); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1988); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983); Shaw Group, Inc. v. Triplefine International Corp., 322 F.3d 115 (2nd Cir., 2003); Painewebber, Inc. v. Bybyk, 81 F.3d 1193 (2nd Cir., 1996); Porta Sys. Corp. v. Aponte, 00 Civ. 0087, 2000 U.S. Dist. LEXIS 20824 (S.D.N.Y., January 25, 2000).

HN5[↑] When the parties to a dispute have entered into an arbitration agreement, a court's only functions are to ensure that there is an agreement to arbitrate, that [*29] the agreement is enforceable, and that the issues presented to the arbitrators are within the scope of the arbitration agreement. See Howsam, 537 U.S. at 83; At&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). The Court has held that the agreement

to arbitrate found in numbered paragraph 19 of the Agreement is binding on the parties to this litigation. The only issue remaining for the Court to decide is, then, whether or not Petitioner's proposed statute of limitations defense falls within the scope of this agreement.

This is what courts have called a "question of arbitrability." HN6[↑] "Questions of arbitrability" are "issues for judicial determination unless the parties clearly and unmistakably provide otherwise." At&T Technologies, Inc. v. Communications Workers, 475 U.S. at 649 (emphasis added). Parties may, then, "provide" that even threshold issues of arbitrability are to be decided by arbitrators. In the Second Circuit, issues relating to timeliness are treated as issues of arbitrability. See Bybyk, 81 F.3d at 1199.

The agreement to arbitrate mentions no state law. To [*30] the contrary, it specifically refers to the Federal Arbitration Act. Therefore, federal law and precedent should guide this Court in reading and evaluating the scope of the agreement. HN7[↑] Supreme Court precedent provides that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration' …. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)). Here, there is no doubt.

The arbitration clause is a classic example of a broad-form arbitration agreement. HN8[↑] Under the law of this Circuit, the scope of such agreements includes issues relating to timeliness. See Bybyk, 81 F.3d at 1199-1200 ("The parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues (with or without specific reference to timeliness) for resolution by the courts. Paine Webber is thus unable to overcome the [*31] presumption established in the first of the above-listed provisions that 'any and all controversies' are to be arbitrated. An objective reading of the Agreement, therefore, leads us to conclude that the parties intended to arbitrate issues of arbitrability."); Porta Sys., 2000 U.S. Dist. LEXIS 20824 at *2-*4; Coleman & Co. Sec. v. Giaquinto Family Trust, 00 Civ. 1632, 2000 U.S. Dist. LEXIS 16215 at *7 (Nov. 9, 2000). Since Petitioner is bound by the Agreement, it is bound to arbitrate "all past, present, or future controversies" between itself and

Respondent, including its proposed statute of limitations defenses. The petition is, therefore, denied.

*C. N.Y. CPLR § 7502 Does Not Trump the Federal Arbitration Act, Second Circuit Precedent, or United States Supreme Court Precedent in this Case.*

Counsel for Petitioner seeks to have this Court decide on the merits a proposed statute of limitations defense. This remedy is sought based on counsel's conclusion that this Court must act under N.Y. CPLR § 7502(b), which **HN9**[] provides that a party to an arbitration may assert a statute of limitations defense before "the **[*32]** court." This Court does not agree.

Counsel for Petitioner reaches their conclusion because, as they note in Petitioner's Reply, the sole basis for the subject matter jurisdiction of this Court in the present case is 28 U.S.C. 1332. Given this fact, counsel conclude that the Court must apply N.Y. CPLR § 7502(b) because, in diversity cases, "state substantive law must be applied." Reply at 1. [3]

**[*33]** It is a general rule that federal courts sitting in diversity apply state substantive law. *See* Semtek v. Lockheed Martin, 531 U.S. 497, 149 L. Ed. 2d 32, 121 S. Ct. 1021 (2001); Gasperini v. Center for Humanities, 518 U.S. 415, 135 L. Ed. 2d 659, 116 S. Ct. 2211 (1996); Hanna v. Plumer, 380 U.S. 460, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965); Guaranty Trust Co. v. York, 326 U.S. 99, 89 L. Ed. 2079, 65 S. Ct. 1464 (1945); Erie v. Tompkins, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938). However, the conclusion proposed by counsel for Petitioner, that this general rule requires that this Court apply N.Y. CPLR § 7502(b) in this case, relies on two premises that Petitioner does not defend. The first is that the state law that should apply in this diversity action is New York law. The second is that the N.Y. CPLR § 7502(b) is "substantive law" within the meaning of this designation under *Erie v. Tompkins* and its progeny. [4] Counsel's conclusion is wrong because both of these premises are false.

**[*34]** New York law would likely not be the appropriate source of substantive law in this case. This Court has already held that the Margin Account Agreement recites binding terms of contract between the parties. Numbered paragraph 17 of the Agreement states, in an objective mode, that "the rights of the parties [shall be] determined in accordance with the laws of the State of Maryland and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof." Just as the parties have bargained to refer controversies between them to arbitration, they have bargained to have these controversies decided according to Maryland and federal law. Were it called to rule on this issue here, this Court would be loth to deny the parties the fruits of this bargain. [5] **[*35]** On this basis, the Court would likely not impose New York law on the parties. [6]

If the Court was to apply New York substantive law in this case, it would not apply N.Y. CPLR § 7502(b). Citing *Erie v. Tompkins,* among other authorities, counsel for Petitioner asserts that, in this case, "state substantive law must be applied." Reply at 1. Counsel assumes, without arguing, that New York Civil Procedure Law and Rules Section 7502(b) is substantive rather than procedural. It is not.

**HN10**[] "Federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini, 518 U.S. at 427. The section at issue here, 7502(b), is

[3] The Court need not test this argument to reach a decision on the present petition. Consistent with this Court's holding, *supra,* the parties' agreement to arbitrate reigns supreme. According to the terms of their agreement, all controversies between them, including questions of arbitrability, must be sent to arbitration. Any rights or options provided by law, New York law included, are subject to the terms of that bargain. *See* Porta Systems, 2000 U.S. Dist. LEXIS 20824 at *2-*4. Thus, the Court need not rule on the status and impact of N.Y. CPLR § 7502(b). Given the role that this statute plays in HD Brous's petition and in counsel's arguments in support of the petition, however, a brief discussion of this choice of law issue is appropriate.

[4] In fact, counsel for Petitioner, in another context and because they must, on page 11 of Petitioner's Reply, argue that N.Y. CPLR § 7502(b) is procedural rather than substantive law. This issue is discussed, *infra,* in the sanctions section of this Opinion.

[5] It is worth noting that the general choice of law provision found in numbered paragraph 17 of the Agreement does not limit or modify the terms and scope of the arbitration agreement. *See* Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); Bybyk, 81 F.3d at 1200; Coleman, 2000 U.S. Dist. LEXIS 16215 at *9; Smith Barney v. Sacharow, 91 N.Y.2d 39, 49, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y., 1997).

[6] In its petition to the State court, Petitioner, relying on the Agreement, argues for this same conclusion. Counsel reverses this position in the Reply. This reversal is discussed, *infra,* in the sanctions section of this Opinion.

2004 U.S. Dist. LEXIS 3095, *35

found in the New York Civil Procedure Rules and Law. Of course, this title alone does not determine the true nature of *N.Y. CPLR 7502(b)*. *N.Y. CPLR § 5501(c)* has, for example, been determined to provide some substantive **[*36]** rights that trump federal procedural rules in diversity cases. *See e.g. Gasperini, 518 U.S. at 427-430*; *Presley v. United States Postal Serv., 317 F.3d 167, 173 (2nd Cir., 2003)*. Similarly, the Supreme Court has held that state rules establishing when an action commences trump *Federal Rule of Civil Procedure 3* in diversity cases. *See Walker v. Armco Steel Corp., 446 U.S. 740, 750-752, 64 L. Ed. 2d 659, 100 S. Ct. 1978 (1980)* (reaffirming *Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 93 L. Ed. 1520, 69 S. Ct. 1233 (1949)*). Here, however, the designation of *§ 7502(b)* as "Procedural" is not merely a matter of title, it is an accurate description.

Classification of a law as "substantive" or "procedural" is not always a transparent task. Since *Erie,* however, the Supreme Court has offered significant and helpful guidance to district courts embarking on this analysis. **HN11**[↑] *Guaranty Trust Co. v. York* established the long-lived outcome-determinative test, which asks of a particular law: "Does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would **[*37]** be controlling in an action upon the same claim by the same parties in a State court?" *Guaranty Trust, 326 U.S. at 109*. This is, it seems, the rule invoked by counsel in Petitioner's Reply, where it is claimed that "since the removal petition rests on diversity jurisdiction, there is no reason for this Court to reach a different result than a state court would in ruling on Brous' [sic] petition." Reply at 3. In *Hanna v. Plumer,* the Court refined the *Guaranty Trust* rule, pointing out that the outcome-determinative test was just one way to assess "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna, 380 U.S. at 468*. *See also Semtek, 531 U.S. at 504* (citing and applying the rule from *Hanna*).

In *Hanna v. Plumer,* the Supreme Court instructed federal courts to ask "whether application of the [State's] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect **[*38]** upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Hanna, 380 U.S. at 468*. In *Hanna,* the Court was confronted with a situation in which one of two

competing rules of service would have ended the litigation before consideration of the case on the merits. The other would have allowed the case to continue. The choice between these two competing provisions would, on this basis, have determined the outcome of the case. Moreover, it would have provided obvious motivations for forum shopping.

The situation in this case is much different. *N.Y. CPLR § 7502(b)* does not limit or expand the spectrum of possible defenses available to Plaintiff. It does not establish special rules of review. It does not affect burdens of proof. It does not shift or alter critical elements of a statute of limitations defense. It only empowers New York courts to consider petitions asserting that arbitration claims are time barred. Assuming that there are right and wrong answers to the questions posed by Petitioners proposed statute of limitations defense, the outcome should not **[*39]** be different if a court considers the defense as opposed to an arbitrator. On this basis, the Court is not convinced that *N.Y. CPLR § 7502(b)* is, in any way, outcome determinative. Its only effect is to allow courts to consider timeliness concerns rather than leaving these issues to arbitrators.

It is also hard to believe that *N.Y. CPLR § 7502* would sponsor rampant forum shopping. Whether Petitioner's defenses are reviewed by a court or a panel of arbitrators, the same legal standards will apply. The same relevant facts will be presented. Either body would be asked to play the same basic game of connecting the dots. *See e.g. Zoll v. Ruder Finn, Inc., 2004 U.S. Dist. LEXIS 144, Nos. 02 Civ. 3652 and 01 Civ. 1339, 2004 WL 42260 at *3 (S.D.N.Y., Jan. 7, 2004.)* It is hard to believe that potential litigants would spend time forum shopping solely in order to have these questions of arbitrability decided by a court rather than by an arbitrator, or vice-versa.

**HN12**[↑] Forum shopping concerns are particularly muted in cases involving *N.Y. CPLR § 7502* because parties have already, by definition, done their shopping. As a general rule, **[*40]** parties can only be compelled to submit to arbitration if they have already agreed to arbitrate controversies between them. *See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)*. As discussed *infra,* **HN13**[↑] where parties have agreed to arbitrate, questions of arbitrability, including statute of limitations defenses, are within the purview of the courts unless the parties have already agreed to submit them to arbitration. This is true

in both the federal system and in the New York courts. Where parties have agreed to send questions of arbitrability to arbitration, however, New York courts and federal courts agree that the bargain should be respected. *See Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); Painewebber, Inc. v. Bybyk, 81 F.3d 1193, 1199 (2nd Cir., 1996); Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y., 1997)*. This is certainly true here, where the Federal Arbitration Act is specified in the arbitration clause. *See Sacharow, 91 N.Y.2d at 47-49; Prudential Securities v. Mandt, 205 A.D.2d 424, 424-425, 613 N.Y.S.2d 626 (N.Y. App. Div. 1st, 1994)* **[\*41]** ("the court committed reversible error in determining that the Federal Arbitration Act did not preempt a New York court's jurisdiction to determine the timeliness of the appellant's claims.").

Here the parties have elected to have all controversies between them sent to arbitration under the Federal Arbitration Act. They could have reached another bargain. *See e.g. Coleman, 2000 U.S. Dist. LEXIS 16215 at \*8-\*9*. They did not. **HN14**[⬆] Under federal law and New York law, courts are required to respect the bargains of parties to arbitration agreements. *N.Y. CPLR § 7502(b)* **HN15**[⬆] does not give New York state courts exclusive right to determine the merit of statute of limitations defenses in arbitration cases. It simply provides them with the power to do so as a function of the more general rights of parties to have their disputes settled by a court of law.

The broad-form arbitration agreement entered into by the parties provides clear evidence of the parties' intention to have all controversies between them arising from their business relationship settled by an arbitrator rather than a judge. That is the bargain of mutual consideration **[\*42]** they have made. This Court will not upset it, as it has been directed not to by the Second Circuit and the United States Supreme Court. This Court holds that all controversies between these parties, including Petitioner's proposed defenses, should and will go to arbitration pursuant to the terms of their agreement to arbitrate.

## III. THE POSSIBLE IMPOSITION OF SANCTIONS AGAINST COUNSEL FOR PETITIONER

*Rule 11(b), Fed.R.Civ.P.*, provides, **HN16**[⬆] in part, that by presenting to the court a pleading, written motion, or other paper, an attorney is certifying that "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a

nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law …" If the court determines, "after notice and a reasonable opportunity to respond," that *Rule 11(b)* has been violated, the court may sanction an attorney. *Rule 11(c)*. **HN17**[⬆] Sanctions may be sought by a party on motion, *Rule 11(c)(1)(A)*, or the court on its own initiative "may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, **[\*43]** law firm or party to show cause why it has not violated subdivision (b) with respect thereto."

**HN18**[⬆] "Due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d 87, 92 (2d Cir. 1999)* (citations and internal quotation marks omitted). In the case at bar, the Respondent has not made a motion for sanctions. But I am considering on my own initiative whether Petitioner's attorneys should be sanctioned. In this circumstance, this Court is required "to apprise [Petitioner's counsel] of the specific conduct alleged to be sanctionable," and to give counsel "a reasonable opportunity to respond." *Id. at 92, 93*. The discussion in Part III of this Opinion is intended to apprise counsel of the areas of the Court's concern. A reasonable opportunity for counsel to respond will be provided in the Order to Show Cause with which this Opinion concludes. [7]

**[\*44]** *A. Maintenance of Contradictory Claims*

At different times in papers filed with the Court and in oral arguments made in support of these papers, counsel make contradictory claims. The Court is particularly concerned by three reversals of convenience. First, in the initial petition to the State court, counsel, relying on the Affidavit of Robert Brous, assert that the terms of the Margin Account Agreement are binding on the parties. In the Reply brief submitted to this Court, counsel reverse this position, without

---

[7] I note in passing that **HN19**[⬆] "the district court possesses the inherent power to levy sanctions. Neither the adoption of *28 U.S.C. § 1927*, a federal statute authorizing sanctions, nor the Federal Rules of Civil Procedure displace the inherent power of the court to sanction." *Hotel St. George Associates v. Morgenstern, 819 F. Supp. 310, 322 (S.D.N.Y. 1993)*. The same due process concerns apply, whatever the source of the district court's sanctioning authority.

reference to their previous position. Second, and by extension, in the initial petition counsel claim that Maryland and federal law should be applied to Respondent's claims. In the Reply brief submitted to this Court, counsel, again without reference to their previous position, assert that New York law should rule. [8] Third, in the Reply brief itself counsel argue, initially, that *N.Y. CPLR § 7502(b)* is "substantive law" under *Erie v. Tompkins* and its progeny. Later in the same brief, however, counsel contend, because they must, that *N.Y. CPLR § 7502(b)* is merely procedural law.

[*45]  None of these contradictory arguments is made in the alternative. [9] In fact, counsel do not, for obvious reasons, even point out the contradictions. They certainly do not provide any explanation. Rather, counsel exhibit a pattern of shifting their position at their convenience. Without providing the Court with explanation for these shifts, the contradictions give rise to an inference that at least one half of each mutually exclusive pairing is a potential violation of *Rule 11(b)(2)*. Furthermore, counsel's maintenance of these contradictions of convenience in papers submitted to the Court may, of itself, be sanctionable under *Rule 11*.

[*46]  Counsel's behavior in this regard is particularly troublesome since it effectively denied Respondent an opportunity to respond. In the first two cases, counsel took a position in the petition to the State court, reversing themselves in the Reply after Respondent had

---

[8] These first two examples involve the original petition filed in State court. In removal cases, such as this, papers originally filed in State court cannot, of themselves, be the basis for *Rule 11* sanctions. *See Stiefvater Real Estate, Inc. v. Hinsdale, 812 F.2d 805 (2d Cir., 1987)*. In this case, however, the Court's concern is not with the petition itself or with claims therein. The present concern is with the shift of position in the Reply filed with this Court and with counsel's attempt to prejudice Respondent by the timing of these reversals.

[9] In the case of the third example, counsel's contradictory arguments are part of a single argument. On pages 1, 2, and 7 of the Reply counsel argues that *N.Y. CPLR § 7502(b)* is substantive law, concluding that it must be applied by this Court sitting in diversity. On page 11 of the Reply counsel assert that *N.Y. CPLR § 7502(b)* is merely procedural in order to escape from the choice of law provision in numbered paragraph 17 of the Margin Account Agreement, which they fear might trump their *Erie* argument on pages 1 and 2. Counsel do not take note of, much less explain, this contradiction in the hope, one supposes, that, having denied Respondent a chance to point out the problem, the Court would not recognize the contradiction on its own.

filed his Response. In the third, counsel maintained contradictory positions within the same argument newly made in the Reply. In all three cases, counsel's strategic timing denied Respondent of an opportunity both to respond to arguments newly made in Reply and to point out counsel's irreverent inconsistency.

Moreover, counsel attempted, at the oral argument, to capitalize on this "omission." There and then, counsel faulted Respondent for not presenting reasons why Petitioner should be bound to the terms of the Margin Account Agreement. Counsel repeats this charge in their January 28, 2004 letter to the Court. As the Court pointed out to counsel at the oral argument, Respondent had no reason to make such arguments in his Response. Robert Brous recognized the Agreement in his affidavit submitted with the original petition. Furthermore, in the original petition, counsel not only did not disclaim the terms of the Agreement, [*47] they actively relied upon them. The timing of these reversals and counsel's attempt to capitalize on them are subject to sanction under *Rule 11*.

While *HN20*[↑] not all oral statements to a Court are sanctionable under *Rule 11*, counsel's conduct at oral argument clearly enjoys a close enough nexus to the underlying papers to bring it within the scope of *Rule 11*. *See O'Brien v. Alexander, 101 F.3d 1479 (2d. Cir., 1996)*. Counsel's conduct in this regard is also subject to sanctions under *28 U.S.C. § 1927* as evidence of "dilatory tactics." *See U.S. v. International Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir., 1991)*.

### B. Misleading Use of Authority

In papers filed with the Court and in oral argument expanding upon and supporting these papers, counsel for Petitioner have made inappropriate and misleading use of authority.

First, on page 2 of the Reply and again at the oral argument counsel cited *Smith Barney v. Sacharow, 91 N.Y.2d 39, 47, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y., 1997)* for the proposition that "a New York state court would enjoin the arbitration under CPLR 7502." Reply at 2. Counsel repeated this use of *Sacharow* in [*48] the January 28, 2004 letter to the Court, stating that "it is clear that a New York Court would have enjoined the arbitration pursuant to *CPLR § 7502*." January 28 Letter at 3, citing *Sacharow,* among other cases. In fact, the New York Court of Appeals' holding in *Sacharow* is quite the opposite. The Court held that, under the broad-form

arbitration agreement entered into by the parties before them, a proposed statute of limitations defense should be decided by arbitrators. *Smith Barney v. Sacharow, 91 N.Y.2d 39, 47, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y., 1997)*. The Court so held despite the fact that the parties had also agreed to have their disputes resolved under New York law. *Id. at 47-49*.

Second, in the Reply, counsel cite *Coleman & Co. v. Giaquinto, 236 F. Supp. 2d 288, 300 (S.D.N.Y., 2002)* for the general proposition that "Federal courts sitting in diversity have applied *CPLR 7502* in removed cases to enjoin arbitrations on state statute of limitations grounds." Reply at 2. Counsel rely on this citation for similar propositions throughout the Reply, at oral argument, and in the January 28, 2004 letter. [*49] Judge Chin's actual and particularized holding in the cited case is "that by expressly providing for New York law to govern the arbitration itself, the parties intended for the Court, rather than an arbitrator, to decide petitioners' statute of limitations defense." *Id. at 294*.

In support of this holding, Judge Chin cites, but does not expand upon, his earlier decision in the same case, reported at *Coleman & Co. v. Giaquinto, 00 Civ. 1632, 2000 U.S. Dist. LEXIS 16215 (Nov. 9, 2000)*. There, Judge Chin does follow *N.Y. CPLR § 7502(b)*. His choice to do so, however, turns on a choice of law provision in the body of the arbitration clause before him that specifically incorporated New York law. This, Judge Chin concludes, evidenced an intention by the parties to have the court decide timeliness issues. Absent this effort, Judge Chin points out, the broad-form agreement would have led him to conclude that the parties intended to have timeliness issues and other issues of arbitrability decided by an arbitrator.

In this earlier decision, Judge Chin also notes that a general choice of law provision found elsewhere in the business agreement would not have led him to conclude that New [*50] York law was part of the arbitration agreement in particular. Judge Chin has since been vindicated in this belief by *Shaw Group, Inc., et al. v. Triplefine International Corp., 322 F.3d 115, 123 (2d Cir., 2003)* (citing and quoting with approval the year 2000 holding in *Coleman* "that provision for 'agreement and its enforcement' to be governed by New York law did not evidence parties' intent to be bound by New York arbitration law).

The agreement to arbitrate in the Margin Account Agreement makes no mention of New York law. The general choice of law provision in numbered paragraph

17 mentions only Maryland and federal law. The arbitration clause mentions no other legal authority than the Federal Arbitration Agreement. Despite counsel's representation to the contrary, then, *Coleman* unambiguously supports Respondent in this case. By citing the squib paragraph in the later *Coleman* decision, counsel for Petitioner seems to attempt to mislead this Court as to the nature and impact of Judge Chin's decision in *Coleman*.

Third, counsel for Petitioner cite the Second Circuit's decision in *SG Cowen Securities Corp. v. Messih, 224 F.3d 79 (2d Cir., 2000)* [*51] for the proposition that "federal courts sitting in diversity have applied CPLR 7502 in removed cases to enjoin arbitrations on state statute of limitations grounds.". Reply at 2. This case did not deal with an arbitration agreement nor did it concern *N.Y. CPLR § 7502(b)*. The issue before the Second Circuit in *SG Cowen* was the applicability of *N.Y. CPLR § 7502(c)*, which contemplates the provision of injunctive relief in support of arbitration. The specific issues in *SG Cowen* had to do with what considerations should guide decisions to grant injunctive relief. While the proposition forwarded by counsel, that courts in this District have applied *N.Y. CPLR § 7502*, is general enough to find support in *SG Cowen,* reference to that case is misleading in the context of counsel's argument in the Reply, which is limited to *N.Y. CPLR § 7502(b)*.

Fourth, in the Reply, at page 11, and at oral argument, counsel claim that because Petitioner did not sign the Margin Account Agreement Petitioner is not bound by its terms. In support of this argument, counsel cite *E.I. DuPont De Nemours v. Rhone Poulenc, 269 F.3d 187 (3rd Cir., 2001)* [*52] . As is evident, *DuPont* is a Third Circuit case. While it might be persuasive authority before this Court, counsel fails to cite significant contrary authority in this Circuit. *See, e.g., American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999)*; *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2nd Cir., 1999)*; *Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995)*; *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d at 1060 (2nd Cir. 1993)*; *McAllister Bros. v. A & S Transportation, 621 F.2d 519, 524 (2nd Cir., 1980)*; *Fisser v. International Bank, 282 F.2d 231 (2nd Cir., 1960)*. *HN21* [↑] Failures to cite and address contrary authority are subject to *Rule 11* sanction. *See Blissett v. Casey, 969 F. Supp. 118, 124 (N.D.N.Y., 1997)*; *Allstate Ins. Co. v. Administratia Asigurarilor, 163 F.R.D. 196 (S.D.N.Y. 1995)*.

In addition to this omission, counsel distorted the holding in *DuPont* at the oral argument and again on page 2 of the January 28, 2004 letter. **[\*53]** In both of these instances, counsel cited *DuPont* for the proposition that Petitioner is not bound by the arbitration clause because it has not sought or asserted benefits derived from the arbitration clause in particular. This is an obvious misstatement of the law and of the holding in *DuPont*. **HN22**[↑] The doctrine of estoppel in the context of arbitration agreements is designed to "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *DuPont, 269 F.3d at 200* (citing *Tencara, 170 F.3d at 353*). Contrary to counsel's representations, then, the key holding in *DuPont* is that "a non-signatory should not be permitted to embrace a contract for some purposes and then disclaim that same contract's unfavorable terms." *Amkor Technology v. Alcatel Business Systems, 278 F. Supp. 2d 519, 521-522 (E.D.PA., 2003)* (citing *DuPont, 269 F.3d at 200*).

Fifth, in the January 28, 2004 letter, counsel cite *Zimring v. Coinmach Corp., 2000 U.S. Dist. LEXIS 18221, No. 00 Civ. 8111, 2000 WL 18551155 (S.D.N.Y., Dec. 19, 2000)* in support of **[\*54]** the proposition that, while Petitioner may be bound by some terms of the Agreement, it is not bound by the arbitration clause in numbered paragraph 19 because "the court may separately consider and parse various provisions of the contract." January 28 Letter at 2. This use of *Zimring* is misleading. The facts in that case were not at all similar to this case. There the plaintiff took affirmative steps to limit his participation in the contract. *Zimring 2000 U.S. Dist. LEXIS 18221, [WL] at \*1*. Here, Petitioner took no such steps. Furthermore, Petitioner, as Respondent's Financial Services Organization, is specifically referenced in the arbitration agreement found in paragraph 19 of the Margin Account Agreement.

These citations to authority are problematic because they might support an inference that counsel attempted to mislead the Court.

## C. Factual Misrepresentations

Arguing in support of their contention that Petitioner is not bound by the terms of the Margin Account Agreement, counsel stated, at the oral argument, that Petitioner was not a beneficiary of the Agreement. This is not so. Not only is Petitioner, as the Financial Services Organization, referred to numerous times in

the Agreement, it **[\*55]** is specifically named as an intended beneficiary in numbered paragraph 2.

### D. Maintaining a Frivolous Petition

While this Court has spilled considerable ink in setting forth the reasons that it will deny the present petition, that ink need not have been spent. Despite counsel for Petitioner's claims to the contrary, and consistent with the analysis above, the facts and law are clear in this case. Petitioner entered into a business relationship with Respondent. In initiating this relationship, Petitioner presented Respondent with certain terms. As is demonstrated by the Agreement, Respondent accepted those terms.

Robert Brous, in his affidavit, seemed to appreciate these facts. Counsel, recently, conveniently, and without evidence or cause, have sought to disclaim these terms. Counsel have also misrepresented and abused key authorities. A proper evaluation of Petitioner's obligations and the relevant case law in this Circuit leave no question that this petition is without merit. What little hay it makes is due exclusively to counsel's sanctionable activities. Respondent's Response made much of this evident. Counsel should have abandoned the petition and allowed the matter **[\*56]** to go to arbitration. Instead, Counsel made matters worse and worse for themselves by their conduct in their Reply, at oral argument, and in the January 28, 2004 letter to this Court.

## IV. CONCLUSION

For the foregoing reasons the Court makes the following ORDER:

1. The petition to stay or enjoin the arbitration pending before the New York Stock Exchange is denied. The petition is dismissed, with prejudice. The arbitration will proceed according to the rules and procedures of the New York Stock Exchange.

2. Counsel for Petitioner who signed the papers in this case are directed to file written submissions on or before March 31, 2004, showing cause why they have not violated *Rule 11(b)(2)* as the result of the filings and oral presentations described in Part III of this opinion.

3. Since a district court's *sua sponte* sanctioning of an attorney does not authorize the court to award the opposing party its attorney's fees, an award that can be made only by motion, *Nuwesra, 174 F.3d at 94-95*,

2004 U.S. Dist. LEXIS 3095, *56

counsel for Petitioner need not serve copies of its submissions on counsel for Respondent.

4. After considering the written submissions of Petitioner's counsel, the Court will **[*57]** schedule a hearing at which counsel may make such further submissions as they may be advised, and respond to such questions as may occur to the Court.

It is SO ORDERED.

Dated: February 25, 2004

CHARLES S. HAIGHT, JR.

UNITED STATES DISTRICT JUDGE

---

**End of Document**

Maddy Sinkovich