UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'MARCO CRAFT, ET AL.,

Plaintiffs,

v.

RICHARD BILLINGSLEA, ET AL.,

Defendants.

_____/

Case No. 17-cv-12752

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING CITY OF DETROIT'S MOTION TO QUASH AND FOR PROTECTIVE ORDER [#240] AND GRANTING DEFENDANTS' MOTION TO COMPEL SETTLEMENT [#250]**

### I. INTRODUCTION

Presently before the Court is the City of Detroit's Motion to Quash and for Protective Order, filed on February 12, 2021, and Defendants' Motion to Compel Settlement, filed on March 29, 2021. *See* ECF Nos. 240, 250. The matters are fully briefed. *See* ECF Nos. 245, 248, 252, 253. A hearing on this matter was held on May 4, 2021. For the reasons below, the Court will DENY the City of Detroit's Motion [#240] and GRANT Defendants' Motion [#250].

### II. BACKGROUND

The instant action stems from a series of police encounters between Plaintiffs and certain Defendants throughout 2016 and 2017. *See* ECF No. 224, PageID.12950. After several stays and extensions, discovery in this matter closed

in July 2019.  ECF No. 240, PageID.13148.  On May 8, 2020, this Court denied Plaintiffs' summary judgment motion and granted in part and denied in part Defendants' summary judgment motions.  *See* ECF No. 224.  The Court dismissed the City of Detroit from this case in its Opinion and Order, finding that Plaintiffs could not maintain their *Monell* claim against it at the summary judgment stage.  *See id.* at PageID.12994.

Since the Court issued its Opinion and Order, the parties engaged in significant settlement discussions with Executive Magistrate Judge R. Stephen Whalen.  On November 16, 2020, this matter was reportedly settled against all Defendants except Defendant Richard Billingslea.  Despite subsequent settlement conferences with Executive Magistrate Judge Whalen in December 2020 and February 2021, no settlement was reached with Defendant Billingslea.  This was confirmed in a status conference held by this Court on March 2, 2021.

The instant Motion to Quash and for Protective Order arises from a subpoena sent by Plaintiffs to the City of Detroit on February 1, 2021.  ECF No. 240, PageID.13147.  The subpoena seeks "Defendant Billingslea's unredacted personnel file and materials related to the City's decision on whether to indemnify Defendant Billingslea."  *Id.*  The City of Detroit seeks to quash this subpoena and requests a protective order, arguing that "Plaintiffs had an abundance of opportunities for discovery during this case and the issuance of a subpoena at this stage of the case is

an attempt to circumvent the discovery deadline." *Id.* Plaintiffs dispute the City's characterization of the subpoena and argue that information regarding the indemnification of Defendant Billingslea is relevant under these unique factual circumstances and critical to Plaintiffs' claims at trial. *See* ECF No. 245, PageID.13225-26.

### III. LEGAL STANDARD

A party is entitled to evidence that is relevant to the parties' claims and defenses and proportional to the needs of the case, while taking into consideration "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* FED. R. CIV. P. 26(b). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." FED. R. EVID. 401.

"[D]istrict courts have discretion to limit the scope of discovery when the information sought is overbroad or unduly burdensome." *See Fears v. Kasich* (*In re Ohio Execution Protocol Litig.*), 845 F.3d 231, 236 (6th Cir. 2016). The district court "may limit the scope of discovery 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)). While "a plaintiff should not be denied access to information necessary to establish [his] claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Id.* (quoting *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

Rule 26 additionally states that "[a] party or any person from whom discovery is sought may move for a protective order." FED. R. CIV. P. 26(c)(1). Pursuant to Rule 26(c)(1), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D).

Finally, Rule 45(d)(3) governs when a court is required or permitted to quash or modify a subpoena to protect persons subject thereto. Specifically, the district court may quash or modify a subpoena if it requires "disclos[ure of] a trade secret or other confidential research, development, or commercial information[.]" FED. R. CIV. P. 45(d)(3)(B)(i). Alternatively, the district "court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party" shows substantial need for the discovery "that cannot be otherwise

met without undue hardship; and []ensures that the subpoenaed person will be reasonably compensated." FED. R. CIV. P. 45(d)(3)(C).

### III. DISCUSSION

The City of Detroit argues that the subpoena should be quashed for five reasons: (1) Plaintiffs' subpoena is untimely because it was served after the close of discovery; (2) Plaintiffs' discovery request is neither relevant nor proportional to the needs of this case; (3) the information sought in the subpoena is subject to the deliberative process privilege; (4) the privacy privilege applies to Defendant Billingslea's personnel file; and (5) the information sought in the subpoena is subject to the work product and attorney-client privileges. The Court will address each argument in turn.

### A. Timeliness

The City of Detroit first argues that Plaintiffs' subpoena is untimely because it is outside the course of discovery and could have been pursued at an earlier date. ECF No. 240, PageID.13150. The City emphasizes that "it is well established that subpoenas constitute discovery, subject to discovery cut-off dates," and that Plaintiffs have failed to establish good cause to allow this belated discovery request. *Id.*

It is ultimately left to the discretion of district courts, however, to determine the scope of discovery and allow for extensions when appropriate. *See Fears*, 845 F.3d at 236. The City of Detroit cites to no binding case law that requires this Court

to quash the subpoena because it was served after the close of discovery. Instead, the Court is persuaded by cases in this District that have permitted post-discovery subpoenas upon showings of good cause. *See, e.g., Varlesi v. Wayne State Univ.*, No. 10-CV-14793, 2012 WL 12929961, at *2 (E.D. Mich. Feb. 27, 2012). In *Varlesi*, the district court found good cause to allow a limited discovery extension for subpoenaed documents that, among other things, presented issues of material importance and would not delay the scheduled events in the case. *Id.* (noting that the court also could not "discern any prejudice from allowing a limited extension of discovery to uncover possibly critical documents.").

The Court notes that the circumstances of this case have changed significantly since discovery closed in July 2019; the parties engaged in numerous settlement discussions and all Defendants except Defendant Billingslea reached a tentative settlement with Executive Magistrate Judge R. Steven Whalen in November 2020. Now, the issue of the City of Detroit's potential indemnification—or refusal to indemnify—its former employee, Defendant Billingslea, is a post-summary judgment issue that warrants the limited extension of discovery. As in *Varlesi*, allowing the issuance of this subpoena will not delay any scheduled events in this case, and this subpoena was not served on the eve of, or following, a trial or verdict. *Id.*; *see, e.g., Wynes v. Paramo*, No. 2:16-CV-12656, 2018 WL 10893038, at *1 (E.D. Mich. Apr. 13, 2018).

Accordingly, the Court will not quash the subpoena on timeliness grounds.

## B. Relevance and Proportionality

The City of Detroit next argues that the subpoena should be quashed because the discovery requested is neither relevant nor proportional to the needs of this case. ECF No. 240, PageID.13151. The City's argument is framed by the requirements under Federal Rule of Civil Procedure 26, which govern requests for protective orders. *Id.*; FED. R. CIV. P. 26(b)(1). Plaintiffs assert, however, that this issue is properly considered under Federal Rule of Civil Procedure 45, which addresses a court's authority to quash or modify a subpoena. ECF No. 245, PageID.13232; FED. R. CIV. P. 45(d)(3)(A).

The Court notes that the City moves for both the subpoena to be quashed and for a protective order in its Motion, but only argues this issue under the Rule 26 standard. Courts in this District have found that "[a] subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (quoting *United States v. Blue Cross Blue Shield of Michigan*, No. 10-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012)).

As an initial matter, the Court finds that the information sought in Plaintiffs' subpoena is relevant, especially given the procedural posture of the case at this time. Defendant Billingslea's potential indemnification by the City of Detroit has been at

issue since at least the filing of Defendants' Motion to Compel Settlement, which evinced a dispute between the parties about indemnification language in the settlement agreement. *See* ECF No. 250. Further, on May 3, 2021, Plaintiffs filed a Motion to Compel Representation and Indemnification and ask this Court to mandate that the City of Detroit indemnify and represent Defendant Billingslea, who is currently *pro se*. *See* ECF No. 254. Thus, the information Plaintiffs seek to acquire is relevant to the needs of this case.

When a district court finds that the documents in question are relevant, the party moving to quash the subpoena "bear[s] a particularly heavy burden in showing that [the p]laintiff's subpoenas impose an undue burden." *Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4513600, at *6. Beyond relevance, the City of Detroit also argues that Plaintiffs already had access to the necessary information, including use of force reports, depositions, activity logs, and more. *See* ECF No. 240, PageID.13154. However, as discussed *supra*, this case has evolved significantly since discovery originally closed in 2019, and the parties and issues material to this case have evolved as well. An indemnification dispute has become a central issue in determining how Defendant Billingslea will be represented leading up to, during, and following a trial and potential verdict. The City of Detroit has therefore failed to meet its heavy burden to demonstrate that the subpoena is overbroad, seeks information already sought, or imposes an undue burden. To the

contrary, Plaintiffs have established "that the breadth of the information sought is 'proportional the needs of the case.'"  *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. at 223.  Because a district court "enjoy[s] broad discretion in matters of pretrial management, scheduling, and docket control," this Court finds that the subpoena is relevant and proportional to the needs of this case and will not quash the subpoena on these grounds.  *Varlesi*, No. 10-CV-14793, 2012 WL 12929961, at *2 (quoting *Kimble v. Hoso*, 439 F.3d 331, 336 (6th Cir. 2006)).

### C. Deliberative Process Privilege

The City of Detroit next asserts that materials related to investigations into Billingslea's citizens' complaints and whether to indemnify him are protected by the deliberative process privilege.  ECF No. 240, PageID.13158.  Plaintiffs oppose this argument and maintain that the privilege does not extend to municipalities and, even if it did, the privilege does not preclude the disclosure of documents related to Billingslea's prior conduct and the City's decision not to indemnify.  ECF No. 245, PageID.13234.

The deliberative process privilege protects from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Liuzzo v. United States*, 508 F.Supp. 923, 937

(E.D.Mich.1981). Generally, certain prerequisites must exist in order to invoke the privilege, including a "formal claim of privilege lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953); *see also Nadler v. United States Dep't of Justice*, 955 F.2d 1479, 1491 (11th Cir. 1992). District courts across the country have found that the privilege should apply only where "high-level policy questions" are implicated. *Allen v. Lickman*, No. 13-13401, 2014 WL 12768335, at *9 (E.D. Mich. Oct. 31, 2014), *objections overruled*, No. CA 13-13401, 2015 WL 506673 (E.D. Mich. Feb. 6, 2015) (quoting *Bernat v. City of California City*, No. 1:10-cv-00305, 2010 WL 4008361, at *5 (E.D. Cal. Oct. 12, 2010)). In cases that do not involve these types of policy questions, courts have ordered the production of materials because they are outside the scope of the privilege. *Id.*

Thus, the "question animating the [deliberative process] analysis is whether disclosure would 'expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Allen*, No. 13-13401, 2014 WL 12768335, at *9 (quoting *Schell v. U.S. Dep't of Health & Hum. Servs.*, 843 F.2d 933, 941 (6th Cir. 1988)). Additionally, even where the materials fall within the scope of the privilege, the privilege may be overcome by a multi-factor balancing test. *Allen*, 2014 WL

12768335, at *10.  The factors include: the chilling effect on governmental self-evaluation; the availability of reports from other sources; and the importance of the information sought.  *Id.*

While Plaintiffs maintain that the deliberative process privilege is not applicable to municipal agencies, the case law on this matter is far from settled.  On the contrary, district courts have recognized the lack of clarity on this issue.  *See, e.g., Jones v. City of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003) (explaining that courts are split on whether the deliberative process privilege applies to municipalities and ultimately determining that the court "need not definitely decide . . . whether a municipal agency . . . enjoys a deliberative process privilege.").  Further, the City of Detroit notes that courts in this District have found that the privilege extends to specific, limited documents produced by municipal police departments.  *See Nelson v. City of Madison Heights*, No. 13-10632, 2015 WL 13022177, at *3 (E.D. Mich. Jan. 12, 2015).

Given the existing precedent in this District, the Court will decline to adopt Plaintiff's argument that the privilege does not extend to municipalities and will instead proceed with the deliberative process analysis of the City's claims.  The City of Detroit cites to *Bayliss*, a Third Circuit case, for the proposition that review sheets containing opinions about internal disciplinary investigations are protected by the deliberative process privilege.  *Bayliss v. New Jersey State Police*, 622 F. App'x 182,

11

185 (3d Cir. 2015); ECF No. 240, PageID.13156-13157.  The documents in *Bayliss* involved detailed misconduct reviews where "supervising members offer[ed] their opinions on the investigation and their recommendations as to whether to impose discipline," which was then reviewed and considered by a higher-ranking police official.  *Id.*

This Court finds, however, that the documents sought by Plaintiffs here are not as clearly subject to the deliberative process privilege as in *Bayliss*.  The *Bayliss* materials contained multiple levels of review, deliberation, and various opinions from supervising officers.  *See id.* at 185-186.  These documents were clearly part of the evaluative process for the state police department.  *Id.*  In the instant case, the City of Detroit broadly and ambiguously asserts its claim of privilege in response to Numbers 10 and 12 of Plaintiffs' Requests for Production.  *See* ECF No. 240-2, PageID.13174-13177.  Neither the information regarding Defendant Billingslea's citizens complaints nor the City's investigation into his indemnification fit squarely into the definition of "advisory opinions and similar deliberative evaluations" that this privilege protects.  *Marmelshtein v. City of Southfield*, No. 07-15063, 2012 U.S. Dist. LEXIS 85409, at *4 (E.D. Mich. June 20, 2012).  Instead, Plaintiffs' request is limited to the citizens complaints against Defendant Billingslea, "including documents related to whether the department sustained the allegations in the citizen

complaints and any corresponding disciplinary actions" as well as the City's determination on his indemnification.  ECF No. 245, PageID.13235-13236.

The Court finds that this matter is more akin to similar cases cited by Plaintiffs in this District, including *Hoban*, which held that the disputed department materials were comprised "almost entirely . . . [of] facts and summaries of the evidentiary record . . . [and did] not generally reveal deliberative processes of the Sheriff's Department."  *Hoban v. Sprague*, No. 2:18-CV-12011-TGB, 2019 WL 3219709, at *4 (E.D. Mich. July 17, 2019).  As in *Hoban*, the information here was not plainly used to formulate public policy, and it is additionally related to purported government misconduct in its failure to address Billingslea's prior disciplinary incidents.  *Id.* ("The sheriff's department did not use the internal investigation report and accompanying materials to formulate public policy; instead, it used the report to determine whether to discipline individual officers.").  Further, courts in this District have emphasized that "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."  *Id.* (quoting *Austin v. Redford Twp. Police Dep't*, No. 2:08-CV-13236, 2011 WL 13324125, at *9 (E.D. Mich. Mar. 18, 2011)).

The case law on this issue, while vast and at times conflicting, ultimately suggests that the deliberative process privilege is quite limited. *See Reynolds v. Addis*, No. 18-13669, 2019 U.S. Dist. LEXIS 228247, at *8 (E.D. Mich. Nov. 26, 2019). This Court agrees with the findings in *Allen*, which emphasizes that internal police documents, such as those sought by Plaintiffs here, are overwhelmingly factual and thus fall outside the scope of the privilege. *Allen*, 2014 WL 12768335, at *9 (including a parenthetical from an Eastern District of New York case explaining that "[a] number of courts have held that the deliberative process privilege does not preclude the disclosure of documents concerning internal affairs investigations in civil rights suits against law enforcement agencies.") (additional citation omitted).

Further, even if the deliberative process privilege did apply to the documents sought in the subpoena, the privilege would be overcome by Plaintiffs' interest in the information outweighing the City's confidentiality interests. *Id.* at *10. As in *Allen*, this Court does not suspect that the disclosure of these materials will produce a chilling effect on future disciplinary actions or decisions whether or not to indemnify former employees involved in civil rights lawsuits. *Id.* The information Plaintiffs seek is relevant and cannot be acquired elsewhere, especially since Defendant Billingslea is a former employee and no longer has access to any of these documents. Finally, Plaintiffs' new Motion to Compel Representation and

14

Indemnification brings the City's indemnification investigation to the forefront of this case and further justifies the sufficiency of Plaintiffs' subpoena. The "deliberative process privilege should be limited to communications designed to contribute, directly, to the formulation of important public policy" and such a limitation does not protect "most of the kinds of information police departments routinely generate." *Reid v. Cumberland Cty.*, 34 F. Supp. 3d 396, 407 (D.N.J. 2013) (internal citations omitted). Under these limitations, the City of Detroit has not carried its burden to demonstrate why the disputed materials should be withheld.

Accordingly, the Court will not quash Plaintiffs' subpoena on the basis of the deliberative process privilege.

### D. Privacy Privilege

Next, the City of Detroit argues that allowing Plaintiffs' access to Defendant Billingslea's unredacted personnel file "would be an invasion of Billingslea's privacy" and "could pose a serious threat of harm if it were to fall into the wrong hands." ECF No. 240, PageID.13162-13163. Plaintiffs maintain that the City's concerns are entirely speculative and that it lacks standing to assert this privilege on behalf of Defendant Billingslea. ECF No. 245, PageID.13238.

The Court agrees with Plaintiffs that the City of Detroit has failed to demonstrate its standing to claim a constitutional personal privilege, as it has attempted to do so here. *Kallstrum*, the case cited by the City as support for its

argument, found that undercover officers had a fundamental privacy interest in the information contained in their personnel records and the City of Columbus was liable for the infringement under § 1983. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069-1070 (6th Cir. 1998).   While *Kallstrom* remains good law, it is neither procedurally nor substantively analogous to the posture of the instant case.   The City of Detroit is not asserting the constitutional privacy argument on behalf of itself; instead, it is attempting to claim a privacy privilege on behalf of Defendant Billingslea, who is a separate party in this case and is no longer employed by the City.

The City of Detroit has not persuaded the Court that it has standing to assert a "constitutionally protected privacy interest in avoiding disclosure of personal matters," and a fear of harm to Defendant Billingslea's personal security or bodily integrity is merely speculative at this juncture.   ECF No. 248, PageID.13385. Further, even a non-speculative threat of retaliation is insufficient to prevent the release of an officers' personal information. *See Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007)   ("In light of our narrow reading of the substantive due process right to non-disclosure privacy, we conclude that the release of the social security numbers was not sensitive enough nor the threat of retaliation apparent enough to warrant constitutional protection here.").

In sum, the Court will decline to quash the subpoena on the basis of a constitutionally protected privacy privilege.  The Court trusts that the parties can work together to craft a "limited confidentiality agreement over information unrelated to Billingslea's former job as a police officer," as proposed by Plaintiffs in their Response.  ECF No. 245, PageID.13238.

### E. Work Product and Attorney-Client Privileges

The City of Detroit next maintains that the documentation regarding the City's indemnification decision are protected by both the work product and attorney-client privileges.  ECF No. 240, PageID.13163.

The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3), which provides for qualified protection for documents prepared in anticipation of litigation by a party or for the party's attorney or other representative. *See* FED. R. CIV. P. 26(b)(3).  Discovery of a party's alleged work product involves a burden-shifting analysis.  *Stampley v. State Farm Fire & Casualty Co.*, 23 Fed. A'ppx. 467, 471 (6th Cir. Nov. 20, 2001).  Once the party seeking the discovery demonstrates the documents at issue are relevant, the opposing party must show that the documents were prepared in anticipation of litigation. *Id.*  At this point, the burden shifts to the moving party to show that (1) it has a substantial need for the information, but (2) is unable to obtain the substantial equivalent of the materials without undue hardship. *Id.*

Rule 26 also governs the attorney-client privilege, and permits broad discovery on any matter that is not privileged if it is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States,* 449 U.S. 383, 389 (1981). A party resisting discovery based on the attorney-client privilege has the burden of showing that the privilege applies. *See Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 480 (N.D. Ind. 2009).

The Sixth Circuit Court of Appeals has established the following elements for evaluating attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor (8) except the protection be waived.

*Humphreys, Hutcheson & Moseley v. Donovan,* 755 F.2d 1211, 1219 (6th Cir. 1985).

Here, the City argues that the documents are not relevant to the remaining issues in the case and that any relevant factual information has already been made available through prior discovery. *Id.* at PageID.13167. Plaintiffs emphasize that the City is no longer a party to this litigation and thus cannot claim protection from

the work product doctrine.  ECF No. 245, PageID.13239.  Plaintiffs further argue that the claims in the City's Motion are conclusory and vague, thus failing to meet its burden that the material falls within the attorney-client privilege.  *Id.* at PageID.13241.

The Court agrees with Plaintiffs and finds that the City has failed to meet its burden to demonstrate the indemnification documents are subject to either the work product or attorney-client privileges.  As discussed *supra*, the Court has already found that the materials sought are relevant to the litigation given Plaintiffs' Motion to Compel Representation and Indemnification, as well as the parties' prior disagreement about indemnification language in the settlement negotiations.  *See* ECF No. 254.  The relevance of the indemnification materials also extends to a jury's ultimate damages determination if a verdict is reached.  *See, e.g., Wallace v. Poulos*, 861 F. Supp. 2d 587, 602 (D. Md. 2012).  Plaintiffs cite to *Wallace* in support of this argument and, while the *Wallace* court faced a different procedural posture, the Court finds its conclusions persuasive in the instant matter.  *Id.*  The *Wallace* court found, for example, that:

> the indemnification agreement in this case would be relevant to several aspects of the jury's punitive damages determination.  For one, informing the jury of the indemnification agreement makes jurors aware that Defendants' ability to pay is essentially a moot point.  For another, telling the jury about indemnification ensures that jurors have an accurate understanding of the likely deterrence effect of their judgment.  When an officer is fully indemnified, specific deterrence is substantially diminished and perhaps eliminated.  Armed with that knowledge, the jury could direct its attention to

other punitive damages considerations, such as general deterrence. *Id.* While this case has not yet reached the trial stage, it is clear that the indemnification issues remain a critical issue between Plaintiffs, Defendant Billinglsea, and the City of Detroit as Billingslea's former employer.

Additionally, the City of Detroit has failed to provide sufficient arguments or evidence that are "specific and detailed [enough] to indicate that the documents were prepared in anticipation of litigation or trial" such that either privilege would apply here. *United States v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006). The Sixth Circuit has found that bare assertions and "conclusory statements" do not meet the requisite burdens. *Id.* Upon review of the parties' respective arguments, the Court agrees with Plaintiffs that the City's arguments concerning privilege do not rise above conclusory statements about the process and content of the indemnification documents. *See, e.g.,* ECF No. 240, PageID.13167 (including assertions such as "the materials . . . would contain counsel's mental impressions, conclusions, opinions or legal theories as it relates to Billingslea's indemnity . . ." or "the communications would be made in confidence and related to the purpose of receiving advice regarding indemnification."). Without more, the City's claims of protection under either privilege fall short of the requisite showing here.

Accordingly, the City of Detroit has failed to show its entitlement to protection of the indemnification documents through the work product and attorney-

client privileges, and the Court will therefore decline to quash Plaintiffs' subpoena on these bases.

### F. Defendants' Motion to Compel Settlement

During the hearing on these matters, the parties continued to discuss the contested language in the settlement agreement regarding Defendant Billingslea's possible indemnification if the parties go forward with a trial and a verdict is reached. *See* ECF No. 250, PageID.13470. At the conclusion of the hearing, the parties agreed to include Plaintiffs' language acknowledging the potential viability of an indemnification claim. Thus, the settlement agreement will be enforced and will include the additional language: "This Release shall not impair Plaintiffs' right to continue their case against Defendant Billingslea and if applicable, pursue collection of any judgment against Billingslea from him, the City of Detroit, or other entities." ECF No. 250-2, PageID.13479. With this additional modification, the Court will grant Defendants' Motion [#250].

### IV. CONCLUSION

For the reasons discussed herein, the City of Detroit's Motion to Quash and for Protective Order is **DENIED** [#240] and Defendants' Motion to Compel Settlement is **GRANTED** [#250].

**IT IS SO ORDERED.**


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  August 18, 2021


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 18, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager